MICHAEL GLENVILLE, Petitioner-Appellant, v. POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Respondents-Appellees.

First District (3rd Division)   No. 87—3656

Opinion filed December 21, 1988.

Donald L. Bertelle, of Chicago, for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Nina Puglia, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Michael Glenville, appeals from the decision of the circuit court of Cook County upholding the findings and discharge order of the respondent, the Police Board of the City of Chicago (Board). Glenville contends the trial court improperly refused to review the Board's failure to consider his alcoholism as a mitigating factor when determining an appropriate sanction for his misconduct.

Glenville does not contest the Board's findings that he disobeyed general departmental rules and regulations and thereby brought dis-

credit upon the police department. Glenville questions, however, the failure of the Board to find his alcoholism to be a mitigating factor and to temper its sanction accordingly.

Glenville's discharge stemmed from a series of undisputed events which occurred on March 28, 1984. The following facts were presented in testimony before the Board. At approximately 2 a.m., Brenda Yearby and Rufus Terry were at the Snuggery, a lounge in Chicago. Yearby had with her a briefcase containing $1,140, mostly in $1 bills but arranged with some larger bills on top. Yearby and Terry displayed the money to the doorman at the Snuggery and proceeded to the bar. She and Terry ordered drinks and then they danced for some time with the briefcase nearby. Glenville also was at the Snuggery that morning. By the time Yearby and Terry arrived, he had consumed several alcoholic drinks. Glenville approached the couple and tried to take the briefcase but Yearby stopped him. Yearby and Terry left shortly after this incident and went to Yearby's room at the Paxton Hotel. Sergeant Michael Williamson testified that he saw Glenville and another man follow the couple outside the Snuggery but did not see where Glenville went after that. Yearby testified that a blue and white police car followed them to the Paxton.

Approximately one-half hour after Yearby and Terry arrived at the Paxton, Glenville and another man entered the hotel lobby. Glenville asked the doorman, Charles Carner, where Yearby and Terry had gone. Glenville identified himself as a police officer and showed Carner his star. He demanded the passkey to Yearby's room but Carner refused to release the key. At this point, a third man entered the building. Glenville proceeded behind the desk and attempted to take the key from Carner by force. He produced a gun and held it to Carner's head, threatening to blow Carner's head off if he did not turn over the key. Glenville beat and kicked Carner for 5 to 10 minutes, at which point Carner relented and agreed to take Glenville upstairs. The second man followed Glenville and Carner upstairs while the third man remained in the lobby.

Inside her room, Yearby heard shouting and two gunshots in the hall. She awakened Terry and hid him in the closet. She placed the briefcase full of money under her dresser. The door to her room opened and Carner, Glenville and the other man entered. Carner immediately dove under Yearby's bed. Glenville placed the gun against Yearby's head and asked where Terry was. Yearby pointed to the closet and Glenville ordered the second man to remove Terry from the closet. Glenville took Terry by the neck, banged his head against the wall several times, and demanded the briefcase. Glenville then ordered Yearby

to open the briefcase for him. He was unable to stuff the money into his shirt, so he placed the money back into the briefcase and stated he would take the briefcase and its contents. Glenville then pulled Carner from under the bed and dragged him from the room.

In the hall, Glenville encountered Jeffrey Catchings. Glenville grabbed Catchings and demanded to know what he was doing in the hall. Glenville took his gun out, aimed it at Catchings and began to push Catchings into a nearby room. He started to follow Catchings inside but stopped when the second man called to him. Glenville and the two other men left the hotel and drove off in a new model blue car. Carner called the police.

Sergeant Williamson responded to the call. He recognized Yearby and Terry as the couple he had seen leaving the Snuggery followed by Glenville. Williamson searched the neighborhood and apprehended Glenville and the two other men as they attempted to drive off in a light blue automobile. Williamson called for back-up officers. The officers searched the suspects and recovered approximately $1,000, mostly in $1 bills. Williamson also recovered from Glenville a police star and identification card, an empty holster, and a handgun with two burn marks indicating that it recently had been fired. The handgun was not registered to Glenville. Glenville was arrested.

Glenville was charged with armed robbery, armed violence, residential burglary, home invasion, and felony theft. After his release on bail he was admitted to a chemical dependency program for detoxification and treatment. While there, he began to attend Alcoholics Anonymous meetings. He presently attends such meetings approximately three times per week. At his criminal trial, however, he testified that he was not an alcoholic and that at the time of the crime he had no alcoholic problems. He was found guilty of misdemeanor theft and was sentenced to one year of conditional discharge.

The Chicago police department charged Glenville with violations of several departmental rules. An administrative hearing before the Board was held on December 5, 1985. Glenville did not contest the charges, but testified that he could not recall the events because he committed the crimes during a "blackout" caused by overconsumption of alcohol. He presented evidence that he was detoxified and currently was engaged in a personal program of alcoholic rehabilitation.

The Board found that Glenville improperly displayed and discharged his firearm, threatened and battered several people, and stole property. Glenville was found guilty of violating several police department rules and was discharged from the department.

On March 14, 1986, Glenville sought this administrative review.

The trial court found that the Board's findings were not against the manifest weight of the evidence and that just cause existed for Glenville's separation from service. The court noted that Glenville produced no evidence demonstrating that his alcoholism caused him to act as he did.

■ On appeal, Glenville contends that because of his alcoholism, the imposition of discharge by the Board was too harsh. The police board permissibly may separate an officer from service when his conduct constitutes "cause" for discharge. (Ill. Rev. Stat. 1983, ch. 24, par. 10–2.1–17.) Before an officer may be discharged for cause, his conduct must constitute some substantial shortcoming which renders continuance in his office detrimental to the discipline and efficiency of the service, and which the law and public policy recognize as good cause for the officer to no longer hold the position. *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 449 N.E.2d 115; *Onesto v. Police Board* (1980), 92 Ill. App. 3d 183, 416 N.E.2d 13.

■ We believe it was well within the Board's discretion to determine that cause existed for Glenville's discharge. It would be difficult to find a more "substantial shortcoming" in a police officer than to have conducted himself in the manner that Glenville did.

Glenville relies on *Walsh v. Board of Fire & Police Commissioners* to support his contention that this court should remand his case for further consideration of his alcoholism and its role in his misconduct. In *Walsh,* however, the officer was on disability suspension for psychiatric problems when he accidentally shot a fellow officer during a suicide attempt. The police board discharged the officer for cause. In light of the vague medical evidence presented at the hearing, the supreme court remanded the case for consideration of the specific nature of the officer's psychiatric problems and whether the accident had any relation to them. *Walsh v. Board of Fire & Police Commissioners,* 96 Ill. 2d 101, 449 N.E.2d 115.

Unlike the officer in *Walsh,* Glenville was not on medical suspension for treatment of his alcoholism. Moreover, the incidents which led to Glenville's discharge were not the result of an accident. Glenville deliberately set in motion the course of events which resulted in his discharge. Glenville attempted to steal Yearby's briefcase at the lounge; he followed Yearby and Terry to the Paxton; he brutalized the hotel doorman to gain access to Yearby's room; and, once inside, he brutalized Yearby and Terry to locate and steal the same briefcase which he had attempted to take just a few hours earlier. Glenville's actions expose a calculated plan to steal a briefcase full of money. A review of the record reveals no evidence which would indicate that

Glenville's alcoholism led him to act as he did. Glenville presented the testimony of an alcoholism therapist, but failed to elicit any testimony which would establish that person suffering from alcoholic blackouts are not conscious of their actions when acting.

Thus, the situation here is not like that in *Walsh*. There is no evidence which would prompt the trial court, or a reviewing court, to look for further details of Glenville's alcoholism. The testimony presented established Glenville's alcoholism, but in no way suggested that alcoholism caused his misconduct. The hearing board is in the best position to consider testimony and evidence and we accord its conclusions great deference. (*Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) We believe that the Board properly discharged Glenville for cause and that the trial court properly upheld the Board's decision.

Glenville asks this court to expand the holding of *In re Driscoll* (1981), 85 Ill. 2d 312, 423 N.E.2d 873, to encompass his situation. In *Driscoll*, the court reviewed the decision of the Attorney Registration and Disciplinary Commission Hearing Board to disbar an attorney who was an alcoholic and who, while suffering from that problem, had converted clients' funds to his own use. The court found that suspension from the practice of law was a more appropriate sanction then disbarment. *In re Driscoll* (1981), 85 Ill. 2d 312, 423 N.E.2d 873.

We believe that in this situation, discharge was an appropriate sanction. Glenville did not jeopardize a client's finances; he jeopardized the lives of several members of the public and stole property. His actions seriously undermined the confidence of the public in its police force. Glenville's alcoholism is tragic but does not explain his calculated misconduct.

Finally, we note parenthetically that the Board points out that in his petition for administrative review, Glenville failed to name all parties of record to the proceeding before the Board as required by the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—103 *et seq.*). This court, however, granted Glenville leave to amend his complaint to name an additional party. Therefore, we will not dismiss Glenville's appeal from improper pleading.

For the foregoing reasons, the order of the circuit court of Cook County upholding the Board's discharge of Glenville is affirmed.

Judgment affirmed.

WHITE, P.J., and RIZZI, J., concur.