(No. 53785

*In re* JAMES FRANCIS DRISCOLL, Attorney, Respondent.

*Opinion filed June 26, 1981.*

David M. Beckerman, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Raymond P. Carroll, of Chicago, for respondent.

MR. JUSTICE SIMON delivered the opinion of the court:

Forging his co-counsel's name, the respondent, James Driscoll, converted to his own use the proceeds of a settlement which, by court order, he was to deposit to the account of two children, his clients. After several months of repeated demands for the money, Driscoll's wife, with his knowledge and consent, repaid the clients out of another client's funds, which Driscoll had improperly deposited to his own account—thus accomplishing a second conversion. This money was repaid about a year later, after the client had filed charges with the Attorney Registration and Disciplinary Commission. These misdeeds were committed in late 1977.

Driscoll admitted the charges and cooperated fully with the disciplinary process. In mitigation, he offered evidence that at the time of his offenses he was an alcoholic.

It appears, from the testimony of the respondent, his wife, and the doctor who headed the alcoholism-treatment program at Lutheran General Hospital, that respondent began drinking heavily in 1973, and his habit and condition worsened progressively until 1978. When the conversions occurred, the respondent had undergone a change in personality. His personal appearance disintegrated, his weight dropped, he ate little, and his nails were falling out; he could not remember where he had been or what he had done; he stayed out every night and had no family or social life; he did not return clients' calls and took no new clients. Nothing mattered to him except a drink. He was, however, competent enough, at least at intervals, to earn some money from his legal practice; in particular, he handled adequately the cases that generated the money he converted.

In August 1978 respondent voluntarily entered Lutheran General Hospital for treatment. He spent three weeks being "detoxified" and getting psychiatric counseling, and was introduced to Alcoholics Anonymous, in which he remains active. He has now successfully abstained from alcohol for about 2½ years and is "perfectly fit" medically. There is always a risk that an alcoholic may relapse into drink; but the risk decreases with time, and the odds are heavily in respondent's favor.

The Hearing Board rejected the idea of alcoholism as a defense, and recommended that Driscoll be disbarred. The Review Board recommended that he be suspended for 30 months and thereafter until further order. A minority of the Review Board proposed suspension for one year, on condition that the respondent continue in an appropriate program of rehabilitation. Before the Review Board, the respondent accepted the idea of a one-year suspension; but in this court he argues that no suspension is necessary, and that the proper discipline would be simply a probation arrangement, during which he would be required to

continue with his rehabilitation.

The legal profession and the courts have begun to acknowledge the problem presented by alcoholic, or, as they are sometimes referred to, "impaired," attorneys. We must find ways to help them and induce them to rehabilitate themselves. That problem, however, is no longer presented in this case, because respondent has already largely rehabilitated himself. And because respondent, on his own initiative, has overcome his active alcoholism and restored himself to a stable, more or less normal, condition, there is no need to keep him from practicing law during a period of temporary disability due to alcoholism. If he were now unfit to practice law, he would presumably remain so indefinitely, and the proper response to protect the public from further injury would be to disbar him or suspend him until further order.

We are not convinced, however, that he is unfit.

His professional misconduct was so serious that if it accurately reflected his continuing character and proclivities, if his alcoholism were only the occasion of his dishonesty and not a strong contributing cause, we would not hesitate to disbar him. Attorneys have been disbarred for misconduct even during a time of insanity or alcoholism where the attorney's behavior after his restoration to sanity confirmed that he was not an honest man (*In re Patlak* (1938), 368 Ill. 547), or where there was no detailed evidence to show the attorney's drinking was crucial to his misconduct (*In re Smith* (1976), 63 Ill. 2d 250).

Here, however, the circumstances support a charitable interpretation. Respondent's judgment and will were undermined by alcoholism; he cared only for drink, and neglected all other concerns, at great cost to himself. His self-destructive behavior was typical of alcoholism; it was not typical of respondent, who was sensible enough until he succumbed to drink, and who is sensible enough again now that he has recovered from his disability. When some-

one who has apparently led an otherwise blameless life is guilty of professional misconduct while crippled by a chemical addiction, we are willing to assume that the misconduct, like his other shortcomings, was dependent on his craving and will not be repeated once that craving is subdued.

The respondent is not now a thief and a menace to his clients; but he did commit two thefts, of the most aggravated sort. Betraying clients by converting their money is conduct not acceptable to the bar under any circumstances. We cannot assent to respondent's suggestion that no punishment is appropriate.

Perhaps in rare cases alcoholism might so change the character of the misconduct or so distort the attorney's state of mind as to provide a complete excuse. Usually, however, alcoholism is at most an extenuating circumstance, a mitigating fact, not an excuse. The attorney's impaired judgment diminishes the responsibility he must bear, but does not eliminate it. Not all alcoholics appropriate the money of their clients; the slide from drink to dishonor may be smooth, but it is neither automatic nor uncontrollable. We can understand it; we cannot excuse it or overlook misconduct as serious as respondent's. Alcoholics need not be treated just like other people; our duty to uphold the standards and reputation of the profession is not incompatible with sympathy and leniency for victims of alcoholism. But their tragedy cannot be used as a license to exploit clients by taking their money.

The respondent was impaired, but not paralyzed. He continued to function to some extent. He occasionally tried cases and negotiated settlements, including those he got into trouble over. At least at times, he must have been rational enough to appreciate his duty to his clients, and to be reminded that even if he did not care, others would. We cannot regard him as entirely an innocent victim of forces beyond his control. To some degree he was culpable. And

perhaps there are many like him; misbehaving attorneys suffer from alcoholism or comparable difficulties remarkably often in our stressful profession. If suspending the respondent will keep any of them from dishonesty or reassure the public that even hard-drinking attorneys must play fair, respondent has no legitimate complaint.

While uniformity in attorney discipline is desirable, every case must be considered on its own merits. (*In re Andros* (1976), 64 Ill. 2d 419.) In this case, we are impressed by Driscoll's sincere, strenuous, and, so far, successful effort to overcome his alcoholism. An exemplary life before and after the incident charged may properly be considered in mitigation. (*In re Bourgeois* (1962), 25 Ill. 2d 47, 52.) We also recognize that the financial hardship, social embarrassment, and perhaps despair that a long suspension would create would not be conducive to sobriety; respondent might actually be fitter after a short suspension than a long one.

Respondent is suspended for six months. In addition, as an experiment in dealing with impaired attorneys, we shall require that he continue, and report at such intervals as the Attorney Registration and Disciplinary Commission shall specify, and until further order, his personal program of rehabilitation, including active participation in Alcoholics Anonymous, the Lawyers' Assistance Program established by the Chicago Bar Association and the Illinois State Bar Association, or some similar program acceptable to the Commission. The Commission may recommend to this court any further conditions it thinks desirable. In addition, the Commission may perhaps call upon other attorneys for help under Rule 755 (73 Ill. 2d R. 755). We, of course, reserve the right to take further action if respondent, either during the period of his suspension or thereafter, succumbs to alcohol or has other problems that reflect upon his fitness to serve clients. Similar approaches have been adopted in California (*Tenner v. State Bar*

318

(1980), 28 Cal. 3d 202, 617 P.2d 486, 168 Cal. Rptr. 333), Minnesota (*In re Johnson* (Minn. 1980), 298 N.W.2d 462), Massachusetts (*In re Flannery* (Mass. Nov. 5, (1980), No. 80—20BD), South Dakota (*In re Walker* (S.D. 1977), 254 N.W.2d 452), and Oregon (*In re Lewelling* (1966), 244 Or. 282, 417 P.2d 1019). After further experience we may revise our rules, which do not now provide for probation or supervision of impaired attorneys. Meanwhile, this court has inherent authority to use such methods of discipline. See *In re Walker* (S.D. 1977), 254 N.W.2d 452.

We would like to see respondent restored to an active practice and a position of esteem in his profession. We must also protect the integrity and reputation of that profession, and protect the public. Pending further experience with alcoholic attorneys, we are trying our best to manage both.

*Respondent suspended.*