[No. S006424. Mar. 19, 1990.]

In re JOSEPH MICHAEL BILLINGS on Disbarment.

## COUNSEL

Theodore A. Cohen for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Richard J. Zanassi and Erica Tabachnick for Respondent.

## OPINION

**THE COURT.*—** In this proceeding, we review the unanimous recommendation of the Review Department of the State Bar Court that petitioner Joseph Michael Billings be disbarred from the practice of law in California. Petitioner's only contention is that disbarment is excessive in light of the mitigating circumstances present in his case. He asserts that his misdeeds are the result of an alcohol problem that he has since overcome.

In view of the seriousness and the large number of the misconduct matters (18), which caused injury to petitioner's clients and occurred over a lengthy period of time, we conclude disbarment is appropriate. We therefore adopt the review department's recommendation.

### FACTS

Petitioner was admitted to the practice of law in California in June 1982. In March 1985, petitioner was involved in an automobile accident in which

---

*Before Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., Kennard, J., and Kaufman, J.†

†Retired Associate Justice of the Supreme Court sitting under assignment by the Acting Chairperson of the Judicial Council.

a passenger in his car was gravely injured. He ultimately entered a plea of nolo contendere to a misdemeanor charge of drunk driving (Veh. Code, § 23152, subd. (b)) in connection with the incident. On receipt of the record of conviction, we referred the matter to the State Bar for a determination whether the offense involved moral turpitude or other misconduct warranting discipline.

At the time of the referral, the State Bar was already investigating eight separate allegations of misconduct by petitioner. The State Bar consolidated those matters with the conviction referral, and thereafter consolidated 11 additional investigations.

In August 1987, at the hearing before the hearing panel referee, the parties stipulated to the facts regarding 18 of the consolidated matters.[1] These may be summarized as follows.

### 1. *Complete Abandonment of Clients*

Over a period ranging from the spring of 1983 to the end of 1985, petitioner was hired by 12 different clients; he essentially did no work on these cases. In most matters, petitioner refused to communicate with the client, and moved his office without notifying some of them. In six cases, petitioner accepted retainers for his services in an amount totaling more than $8,000, none of which had been refunded at the time of the hearing.[2] In three other matters, petitioner accepted retainers totaling $2,250, which he refunded only after the client had obtained a judgment against him, or in response to inquiries by the State Bar. In yet another case, petitioner accepted a retainer consisting of a boat and trailer; he returned these items to the client only after they had been vandalized while in his possession. When his clients retained new counsel, petitioner was invariably uncooperative in turning over the case file to the new attorney.

### 2. *Partial Abandonment of Clients*

During this same period of time (spring 1983 to the end of 1985), petitioner was retained by three additional clients, for whom he did some work, but thereafter, abandoned their cases and (in two of the cases) failed to communicate with the client. In two instances, petitioner accepted retainers totaling $8,500. Petitioner failed to refund this money and failed to give an accounting for the services he had performed.

---

[1] One additional matter was dismissed with prejudice.

[2] During the six-month period preceding the hearing, however, petitioner established a trust fund to repay the victims of his misconduct; he had deposited $6,000 into that fund at the time of the hearing.

### 3. *Practicing Law While Under Suspension*

From September 26, 1986, to March 10, 1987, we suspended petitioner from the practice of law for failure to pay State Bar membership dues. Petitioner nevertheless continued to practice law during this period, representing two clients in matters unrelated to those discussed above. In one of these cases, petitioner performed substantial work for the client, then moved without notifying her of his new address and refused to communicate with her. Petitioner and his client dispute his entitlement to the $12,200 in attorney fees paid to him; the stipulated facts do not reach the issue of petitioner's right to the money.

### 4. *Criminal Conviction*

On March 11, 1985, petitioner, who was uninsured, drove an automobile after consuming a significant quantity of alcohol, and collided with an oncoming car. Petitioner was taken to the police station, where he provided a blood sample that established a blood-alcohol level of .13 percent. His passenger sustained severe bodily injuries requiring hospitalization. Petitioner paid for his passenger's inpatient hospitalization, outpatient recovery, and first and last month's rent when she had sufficiently recovered to return to her apartment. After receiving a letter from the passenger about her reluctance to cooperate in a criminal prosecution, the prosecutor reduced the charges from two counts of felony drunk driving to a single charge of misdemeanor drunk driving, to which petitioner entered a plea of nolo contendere.

The trial court's sentence included a fine, restriction of petitioner's driver license for 90 days, and probation. The court also required petitioner to attend nine sessions of group therapy, three individual counseling sessions, ten hours of alcohol education, and six Alcoholics Anonymous meetings. Petitioner took a year to finish the alcohol programs, which should have been completed in six to eight weeks.

In addition to the stipulated facts set forth above, petitioner presented mitigating evidence consisting of seven witnesses and nine letters of recommendation. Since these form the basis for petitioner's argument before this court, we will discuss them separately at a later point.

The referee found that petitioner had committed multiple violations of the Rules of Professional Conduct of the State Bar,[3] including 14 violations

---

[3] New Rules of Professional Conduct became operative on May 27, 1989; all further references to rules are to the former Rules of Professional Conduct of the State Bar of California unless otherwise indicated.

of rule 2-111(A)(2) [withdrawal from employment without taking reasonable steps to avoid foreseeable prejudice to the rights of his client]; 14 violations of rule 2-111(A)(3) [failure to refund unearned fees]; and 15 violations of rule 6-101(A)(2) [failure to perform legal services competently]. He also found that petitioner had violated Business and Professions Code sections 6068, 6103, and 6117.[4]

In mitigation, the referee found that petitioner was suffering from acute alcohol dependency during the entire period of his misconduct; that he has acquired, or is in the process of acquiring, necessary management skills to enable him to function as a responsible attorney in the community; and that he is actively pursuing rehabilitation and is not likely to return to the use of alcohol. The referee recommended suspension for three years, stayed on condition of a three-year probation with detailed terms.

The review department adopted the hearing panel's findings of fact and conclusions, with certain modifications. It concluded that petitioner's misconduct constituted "a pattern of abandonment of clients, which was a wilful violation of his oath and duties as an attorney," and which constituted moral turpitude. It also found that petitioner had violated two additional sections of the Business and Professions Code.[5] The review department unanimously (13-0) recommended that petitioner be disbarred.

MITIGATING CIRCUMSTANCES

### 1. *Alcoholism*

Petitioner's history of alcohol use dates back to his childhood; his parents encouraged him to drink a can of beer with dinner, and he remembers

---

[4] All further section references are to the Business and Professions Code unless otherwise indicated.

Section 6068 sets forth the duties of an attorney, and section 6103 states in relevant part: "A wilful disobedience . . . of an order of the court requiring him to do . . . an act connected with or in the course of his profession, which he ought in good faith to do . . . and any violation of . . . his duties as such attorney, constitute causes for disbarment or suspension."

Section 6117 states: "During . . . suspension, the attorney shall be precluded from practicing law." The review department amended this charge to reflect a violation of former section 6126, which provided: "Any person . . . practicing law . . . while suspended from membership in the State Bar . . . is guilty of a misdemeanor."

[5] It found that, in addition to sections 6068, 6103, and 6117/6126, petitioner had violated sections 6067 and 6106. Section 6067 sets forth an attorney's oath: ". . . faithfully to discharge the duties of any attorney at law to the best of his knowledge and ability. . . ." Section 6106, in relevant part, states: "The commission of any act involving moral turpitude . . . whether the act is committed in the course of his relations as an attorney or otherwise . . . constitutes a cause for disbarment or suspension."

getting drunk when he was 10 or 11. Both sides of his family have a history of alcoholism. His alcohol dependency worsened as he became older. At the age of 28 or 29, he began to practice law and "pressure-oriented" drinking became a habit. Petitioner blames the neglect of his law practice, his increasing financial difficulties, and the break-up with his girlfriend on his increasingly uncontrolled consumption of liquor. He asserts that he was genetically predisposed to alcoholism because of a family history of alcoholism, and that he did not become an alcoholic through any "moral fault."

### 2. *Psychiatric and Psychological Evidence*

Dr. Garrett O'Connor, an expert in the treatment of chemical dependency, appeared as a witness for petitioner. Dr. O'Connor had prepared a "chemical dependency/psychiatric evaluation" of petitioner. Dr. O'Connor first saw petitioner in mid-1986 when the State Bar referred petitioner to him for evaluation of a possible drinking problem. Petitioner did not cooperate in the evaluation; he was "extremely defensive, hostile and even paranoid"; and he terminated the interview prematurely. Dr. O'Connor had no further contact with petitioner until January 16, 1987, when the Repair program[6] referred petitioner for evaluation and possible treatment. At that time, petitioner still had difficulty coming to terms with the fact that he was an alcoholic.

Since then, petitioner's response to treatment has, in Dr. O'Connor's opinion, been "splendid." Petitioner has been an exemplary patient in the Repair program, he has participated actively in the Alcoholics Anonymous program by attending between five and seven meetings a week, he was on the ninth step of the Alcoholics Anonymous program at the time of the hearing, and he was providing community service to the Cry Help Treatment Center in Burbank. Dr. O'Connor described petitioner's prognosis for continuing sobriety as excellent, "provided that he maintains his treatment activities at their current level."[7]

### 3. *Evidence of Rehabilitation*

Petitioner testified that he has not had any alcohol since January 1987, when he entered the Repair program. At the time of the hearing panel proceedings in August 1987, petitioner had abstained from alcohol for approximately eight months, was actively participating in various

---

[6] "Repair" is a one-year program of out-patient treatment to rehabilitate alcoholics that includes group and individual therapy sessions and is used in combination with outside attendance at Alcoholics Anonymous meetings.

[7] Bonnie Thompson, a licensed marriage, family, and child counselor, has provided private therapy to petitioner on a weekly basis since January 1987.

Alcoholics Anonymous groups, and was attending Alcoholics Anonymous meetings regularly.

### 4. *Evidence of Restitution*

As discussed earlier, petitioner stipulated to returning unearned fees to three of the clients he had abandoned. In addition, his attorney established a trust account to make restitution to other former clients. At the time of the August 1987 hearing, petitioner had deposited over $6,000 into this trust account. The hearing panel referee found the total pecuniary losses suffered by the clients was "less than $15,000."

### 5. *Employment*

At the time of the August 1987 hearing, petitioner had been handling criminal cases for Attorney Arthur Bahrens for approximately four months. At oral argument, however, his counsel advised us that petitioner is again working as a solo practitioner.

### 6. *Character References*

Petitioner submitted nine letters from individuals attesting to his good character. Two letters were from fellow attorneys. One of them had worked with petitioner for six months in 1984 and described him as hardworking and community-service oriented, but said his contact with petitioner became infrequent after 1984. The other attorney, who had known petitioner for two years, noticed a substantial change in petitioner's professional conduct after he gave up drinking. Five letters were from staff and fellow recovering alcoholics from the Repair program; none had known petitioner longer than six months. The remaining two letters were from social acquaintances of no more than six months; one of them had been represented by petitioner at no expense in an eviction hearing.

### DISCUSSION

Petitioner does not contest the review department's findings of fact or its conclusion that his misconduct warrants discipline. He contends, however, that disbarment is excessive and constitutes a punitive approach to his acts of professional misconduct, which he blames on his alcoholism.

■ Our principal concerns in attorney disciplinary proceedings are protecting the public, preserving public confidence in the legal profession, and maintaining high professional standards for attorneys. (*Gary* v. *State Bar* (1988) 44 Cal.3d 820, 827 [244 Cal.Rptr. 482, 749 P.2d 1336], citing *In re*

*Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244].) Although we exercise our independent judgment in determining the appropriate discipline, we attach great weight to the review department's disciplinary recommendation. (*Baker* v. *State Bar* (1989) 49 Cal.3d 804, 822 [263 Cal.Rptr. 798, 781 P.2d 1344]; *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 661 [238 Cal.Rptr. 394, 738 P.2d 740].) We also take into consideration the discipline suggested by the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V; all further references to Standards are to this source). (*Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848, 743 P.2d 908].) These guidelines are not binding on us, but we have often stressed that "we will not reject a recommendation arising from application of the Standards unless we have grave doubts as to the propriety of the recommended discipline." (*Ibid.*) Petitioner bears the burden of establishing the impropriety of the review department's recommendation. (§ 6083, subd. (c); *Twohy* v. *State Bar* (1989) 48 Cal.3d 502, 512 [256 Cal.Rptr. 794, 769 P.2d 976]; *Rosenthal, supra,* 43 Cal.3d at p. 661.) Because no fixed formula exists in determining appropriate discipline, this court must consider all relevant aggravating and mitigating circumstances. (*Warner* v. *State Bar* (1983) 34 Cal.3d 36, 43 [192 Cal.Rptr. 244, 664 P.2d 148]; *Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495 P.2d 1289].)

■ Here, the review department concluded that petitioner's pattern of abandonment of clients constituted moral turpitude within the meaning of section 6106, warranting disbarment. Our previous decisions support that conclusion. As we observed recently in *Twohy* v. *State Bar, supra,* 48 Cal.3d at page 512: " '[H]abitual disregard by an attorney of the interests of his or her clients combined with failure to communicate with such clients constitute acts of moral turpitude justifying disbarment. . . .' " (Citations omitted.) Similarly, the State Bar's current Standards provide that disbarment is the appropriate sanction when an attorney engages in "a pattern of wilfully failing to perform services demonstrating the member's abandonment of the causes in which he or she was retained. . . ." (Std. 2.4(a).)

■ Petitioner contends, however, that even if his conduct would otherwise justify disbarment, that sanction is excessive in light of the mitigating evidence disclosing his addiction to alcohol and his subsequent efforts at rehabilitation. We disagree, for the reasons set forth below.

Petitioner maintains that he has "earnestly and successfully engaged in a strenuous rehabilitation effort." (*Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 207 [168 Cal.Rptr. 333, 617 P.2d 486].) At the time of petitioner's hearing in August 1987, he had been sober for about eight months and was on the ninth stage of the Alcoholics Anonymous twelve-stage recovery program.

Petitioner seeks to rely not only on that evidence, but also on additional declarations presented at the time this case was argued, asserting that he has remained free from alcohol use through December 1989. ▇ Generally, we are reluctant to rely on evidence that is extrinsic to the record of proceedings before the State Bar. (*In re Rivas* (1989) 49 Cal.3d 794, 801 [263 Cal.Rptr. 654, 781 P.2d 946]; *Slavkin* v. *State Bar* (1989) 49 Cal.3d 894, 905 [264 Cal.Rptr. 131, 782 P.2d 270]; *Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1187 [248 Cal.Rptr. 830, 756 P.2d 217]; *Coppock* v. *State Bar* (1988) 44 Cal.3d 665, 682-683 [244 Cal.Rptr. 462, 749 P.2d 1317].) We recently stated, however, that "we will not ignore such evidence where it is the only means by which an attorney can meet the heavy burden of proving rehabilitation from a serious physical or emotional problem precipitating misconduct. [citations omitted.]" (*Slavkin, supra,* 49 Cal.3d at p. 905.)

▇ Because petitioner has engaged in numerous and repeated acts of misconduct over a lengthy period, we believe it is appropriate to require him to undergo the evaluation process of a reinstatement proceeding before we allow him to practice law again. In light of petitioner's record of repeated misconduct, his recent efforts to overcome his alcohol problem do not demonstrate such a "meaningful and sustained period of successful rehabilitation" (*Rosenthal* v. *State Bar, supra,* 43 Cal.3d at p. 664) as to give rise to doubts regarding the unanimous recommendation of the review department that he be disbarred. (*Lawhorn* v. *State Bar, supra,* 43 Cal.3d at p. 1366.)

It is important, however, to emphasize that evidence of successful rehabilitation continues to be important and relevant in appropriate cases. ▇ When evidence of alcohol abuse at the time of an attorney's professional misconduct is coupled with evidence that the abuse was addictive in nature and causally contributed to the misconduct, and when the attorney demonstrates a meaningful and sustained period of successful rehabilitation, such evidence should be considered as a factor in mitigation of disciplinary sanctions. (See *Gary* v. *State, supra,* 44 Cal.3d at p. 828.) ▇ Of these three elements—alcoholism, causality, and recovery—petitioner has satisfactorily demonstrated only the first two. The third element—recovery, or rehabilitation—naturally involves consideration of the attorney's history of alcohol-related behavior, including any alcohol-related misconduct.

According to a consensus of the medical community, alcoholism is a treatable disease. (See *Sundance* v. *Municipal Court* (1986) 42 Cal.3d 1101, 1114-1115 [232 Cal.Rptr. 814, 729 P.2d 80].) Through continued abstinence, an alcoholic may arrest the deleterious manifestations of the disease. Hundreds of thousands of Americans are recovering alcoholics, completely abstinent from alcohol or other mind-altering chemicals. (Alcoholics

Anonymous World Services, Inc., Alcoholics Anonymous (3d ed. 1976) foreword p. xxii.) An alcoholic's rehabilitation is almost universally predicated on a choice to confront his or her problem, followed by abstinence sustained through ongoing participation in a supportive program, such as Alcoholics Anonymous. (See *In re Kersey* (D.C.App. 1987) 520 A.2d 321, 325-326.) As we have recognized, the requisite length of time to show "meaningful and sustained" rehabilitation will vary from case to case.

Petitioner's admission of his alcoholism, his commitment to abstinence, and his active and regular participation in Alcoholics Anonymous are certainly positive considerations. Nevertheless, petitioner's rehabilitation, concededly "sustained," is not so "meaningful," in light of his numerous and repeated acts of misconduct over many years, as to warrant a mitigation of sanctions.

Petitioner contends that his acts of restitution constitute mitigation. Restitution may be considered as a mitigating factor, but generally only when timely made. (*Twohy* v. *State Bar, supra,* 48 Cal.3d at p. 511.) Here, at the time of the hearing in August 1987, petitioner had returned unearned fees to only three of his clients. He did so only after his clients had obtained judgments against him, and in response to pressure from imminent or already initiated State Bar proceedings against him and after attachment of his bank account and further collection action. Although petitioner's attorney established a trust fund for the purpose of restitution, this too occurred only after the initiation of State Bar proceedings, and the amount raised at the time of the hearing fell significantly short of the total needed to reimburse petitioner's former clients. Under the circumstances, we do not attach great significance to petitioner's untimely and incomplete acts of restitution. (*Warner* v. *State Bar, supra*, 34 Cal.3d 36, 47; *Twohy, supra*, 48 Cal.3d at p. 511.)

Petitioner asserts that the lack of prior disciplinary action against him should be considered as a mitigating factor. We note, however, that petitioner's problems with clients arose as early as 1983, only one year after his admission to the practice of law in California, at which time the State Bar commenced its investigation of petitioner. Under Standard 1.2(e)(i), the absence of a prior disciplinary record is properly viewed as mitigating only when the absence is "over many years of practice."

As observed earlier, we generally will not reject a recommendation arising from application of the Standards unless we have grave doubts regarding the propriety of the recommended discipline. Here, petitioner has not met his burden of establishing that the review department's unanimous recommendation of disbarment is erroneous. We are not insensitive to the

debilitating effects that alcohol abuse can have on an individual's personal and professional life. As we said earlier, we commend petitioner for his recent successful efforts in overcoming his problem with alcohol. But, as we observed before, our primary concern is the protection of the public. Petitioner betrayed the trust placed in him by a large number of clients over a period that commenced shortly after his admission to the practice of law and continued for years thereafter. Also, he continued to practice law in defiance of our order suspending him for nonpayment of State Bar dues. Under these circumstances, disbarment is appropriate.

Accordingly, we order petitioner Joseph Michael Billings disbarred from the practice of law in California. His name shall be stricken from the roll of California attorneys. He is ordered to comply with rule 955 of the California Rules of Court, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. Failure to comply with rule 955 of the California Rules of Court may result in imprisonment. (Bus. & Prof. Code, § 6126, subd. (c).) This order shall be effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)