**In the Matter of John P. CLYNE, Jr., a Member of the Bar of the Supreme Court of Delaware.**

Supreme Court of Delaware.

Submitted: July 6, 1989.
Decided: Oct. 15, 1990.

L. Susan Faw, Disciplinary Counsel for the Bd. on Professional Responsibility of the Supreme Court, Wilmington.

Kevin P. O'Neill, Heyden, Kania & O'Neill, Wilmington, for John P. Clyne, Jr.

Before MOORE, WALSH and HOLLAND, JJ.

PER CURIAM:

This is a disciplinary proceeding. The Board on Professional Responsibility ("the Board")[1] held a hearing on January 24, 1989 concerning charges of personal and professional misconduct brought against John P. Clyne, Jr. The charges related to Clyne's mishandling of two clients' cases, his misrepresentations to this Court, and his failure to provide financial records to disciplinary counsel in a timely fashion. In its final report dated February 27, 1989, the Board found clear and convincing evidence that Clyne had violated several provisions of the Delaware Lawyer's Rules of Professional Conduct ("the Rules") and recommended the imposition of severe sanctions.

Pursuant to Board Rule 9(d), Clyne sought review in this Court, contending that the Board should have found alcoholism to be a mitigating factor in his case. While we recognize that addiction to alcohol or other drugs is a form of illness or disease, deserving of consideration as a mitigating factor, there is nothing in this record, including Clyne's lack of effort to either recognize his disease or to demonstrate sincere efforts at recovery, to warrant such consideration here. The record fully supports the Board's factual findings that Clyne reportedly engaged in acts of serious deception. Moreover, Clyne has failed to show that alcoholism was the cause of his professional misconduct or that such violations are not likely to recur. Under such circumstances we have no alternative but to order the ultimate sanction of disbarment.

---

1. The Board is an agency of this Court created under Supreme Court Rule 62. *In re Kennedy,* Del.Supr., 472 A.2d 1317, 1318–19, *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2388, 81 L.Ed.2d 346 (1984).

## I.

The petition to discipline alleged that Clyne neglected two clients' matters, and that in order to conceal his neglect of one of those matters, he made material misrepresentations in open court directly to the Supreme Court. It also alleged that Clyne made additional material misrepresentations to the Court when he sought to secure his transfer back to active status after being released from an alcoholic rehabilitation program. Finally, the petition alleged that Clyne failed to cooperate with disciplinary counsel in attempts to arrange a compliance check of his fiduciary and non-fiduciary accounts. Clyne does not dispute any of these charges and accepts the facts as stated in the petition to discipline.

The first instance of professional misconduct occurred within the first few months of Clyne's legal career and involved his representation of the plaintiff in a civil rights action in federal court, *Washington v. Ayala.* Clyne was not experienced in civil rights cases, but he located an attorney in Pennsylvania, Beverly Thompson, who agreed to take the case. She prepared the complaint, and Clyne's role initially was limited to that of local counsel. After several months, however, Clyne was unable to contact Ms. Thompson, so he began to attend depositions and took over representation of the client.

Subsequently, Clyne was informed that Ms. Thompson had been sick but was going to resume handling the case. Without verifying that information or attempting to contact Ms. Thompson, Clyne thereafter ceased working on the case although he was counsel of record. For whatever the reasons, Clyne presumed that Ms. Thompson would resume representation of the client. That did not occur, and as a result, an answering brief to the defendant's motion for summary judgment that was due on April 1, 1988 was never filed. Even after the federal court notified Clyne on April 19 that no brief had been filed and threatened to decide the matter without an answering brief, he still neither attempted to contact Ms. Thompson nor filed a brief for his client. The defendant's motion for summary judgment was granted.

The Board determined that Clyne's failure to file an answering brief in *Washington v. Ayala* violated Rule 1.3 of the Delaware Lawyer's Rules of Professional Conduct which requires an attorney to "act with reasonable diligence and promptness in representing a client." At the hearing before the Board, Clyne admitted that he should have filed the brief or at least verified that Ms. Thompson would do so, but he argued that the client was not harmed by his misconduct because the case was decided on the merits. He acknowledged, however, that he based that conclusion solely on a reading of the decision and his own personal opinion that the claim was meritless. The Board found Clyne's reasoning specious and speculative, noting that "a well-reasoned brief ... might have convinced the Court to deny summary judgment."

The second instance involving professional misconduct occurred before this Court in the case of *Pierre v. Pierre* when Clyne again failed to file a timely answering brief for his client and then made numerous misrepresentations to this Court in an attempt to cover up that failure. The brief was originally due on March 24, 1988. No brief was filed by that date, but on April 7, Clyne filed an untimely application for an extension claiming that he "ha[d] been unable to complete the brief in large part because another brief [the *Washington v. Ayala* brief] was due in Federal District Court." Subsequently, this Court issued an order on April 8 directing Clyne to show cause why sanctions should not be imposed on him. At the hearing on April 14, Clyne repeated the misrepresentation contained in his untimely application for an extension, maintaining that he had been busy with the *Washington v. Ayala* brief. He further stated that the answering brief in the *Pierre* case was finished but not typed and that he would file it the following Monday, April 18. In fact, both of those statements were false, but in reliance upon them, the order to show cause was discharged.

Clyne then failed to file the *Pierre* brief by the new deadline of April 18. When contacted by the Court Administrator on May 4, Clyne claimed that the brief had been filed with the Supreme Court and served upon opposing counsel. In fact, the brief was not filed and served upon opposing counsel until the following day. When asked again about the late filing by the Court Administrator, Clyne invented a new story. He claimed that a messenger in his office had mistakenly filed an earlier copy of the *Pierre* brief in Superior Court on April 18 and had also served a copy upon the wrong opposing counsel. These statements were knowingly false.

On May 6, this Court issued a second order to show cause, at which Clyne continued his misrepresentations to this Court. He was directed to appear on May 10 and to file a sworn statement explaining what happened with the brief allegedly misfiled on April 18. Clyne's affidavit stated:

(1) Upon questioning the runner from my office regarding the whereabouts of the Answering Brief and Appendix which he was directed to file, I was informed that to the best of his recollection he had mistakenly delivered them to the Prothonotary's Office for Superior Court. He further advised that he believed he may have served Alene Berkowitz's copies upon one of the attorneys on the second floor of her office.

(2) On checking with the Prothonotary's Office, I was told that their personnel could not find any record of the documents filed there.

(3) As of 3:30 p.m. on Monday, May 9, 1988 I have been unable to communicate with the attorney located above Alene Berkowitz's office to confirm or discount the runner's suspicions. I will make every possible attempt to communicate with her prior to the May 10, 1988 Rule to Show Cause hearing.

At the hearing, Clyne reaffirmed the accuracy of the facts contained in his affidavit. He stated that both the messenger and his secretary were willing to provide affidavits supporting his story, but that he had not yet obtained those affidavits. He also claimed to have a copy of the *Pierre* brief with the original affidavits of service, but he stated that he had not brought the copy to the hearing. Finally, he stated that the reason the brief had been misfiled was that he had to leave town unexpectedly on Saturday, April 16, to visit his father who had to have surgery. At the end of the hearing, the Court instructed Clyne to file by 4:30 p.m. that day the copy of the answering brief showing certificate of service on April 18 and containing affidavits from the messenger and secretary who purportedly effected that service. Clyne was unable to comply with that directive by 4:30 p.m. on May 10.

The following day, however, Clyne submitted false documents to support his false statements to the Court. He presented a forged certificate of service, purportedly signed by the messenger in his office, but in fact signed by Clyne. He also rolled back the Prothonotary's date stamp machine and placed an April 18, 1988 date on a newly drafted answering brief. Finally, he surreptitiously placed a copy of the pre-dated brief in the office of opposing counsel. Based on these actions and his numerous misrepresentations to this Court, the Board found that Clyne acted with intent to conceal his misrepresentations to the Court, and concluded that he had violated Rules 1.3 [2], 3.4(a) [3] and 8.4 [4] of the Delaware Lawyer's Rules of Professional Conduct. Clyne does not dispute these findings or legal conclusions.

The third incident addressed by the Board involved a violation of ethical rules after Clyne was transferred to disability

**2.** Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

**3.** Rule 3.4(a) provides: "A lawyer shall not ... unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act...."

**4.** Rule 8.4(c) provides: "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation...."

inactive status. Clyne had been placed on disability inactive status after he enrolled as a resident patient in an alcohol abuse facility. After his treatment, Clyne returned to Wilmington and appeared before the Supreme Court on September 7, 1988 to seek transfer back to active status. At the hearing he claimed not to have had any alcohol since his admission to the treatment center in June.[5] In fact, however, he drank several beers the night before the hearing. According to Clyne, he did so because he was nervous and because the alcohol helped him to fall asleep. When confronted with this misrepresentation by a former colleague after the hearing, Clyne promised to inform this Court promptly of his misrepresentation. He did not do so. It was not until the other attorney threatened to disclose the misrepresentation that Clyne came forward and finally admitted to that falsehood and all previous misrepresentations. The Board found that Clyne's statement on September 7 was knowingly false and constituted a further violation of Rule 8.4. Clyne does not dispute this finding.

Finally, the Board considered the possible ethical violations arising from Clyne's failure to turn over his financial records to the Board in a timely manner. Pursuant to Board guidelines, disciplinary counsel had requested Clyne's financial records relating to fiduciary and non-fiduciary accounts on September 7, 1988. Clyne did not produce the records until mid-December of 1988.

The Board determined that this three month delay violated Rule 8.1(b).[6] Again, this determination is not disputed by Clyne.

Although he did not dispute the facts presented to the Board, Clyne raised three issues as mitigating factors: 1) his youth and inexperience, 2) the fact that his clients suffered no actual harm from his behavior and 3) his drinking problem. The Board flatly refused to accept the first two propositions as mitigating factors. With respect to Clyne's alleged youth and inexperience, the Board found that such factors did not justify Clyne's persistent and contrived misrepresentations to this Court and to the Board's staff. As to the contention that Clyne's clients were not actually harmed by his behavior, the Board found this argument too speculative. Because of his failure to file an answering brief in *Washington v. Ayala,* his client lost a motion for summary judgment. Clyne has not challenged the Board's refusal to consider these two matters as mitigating factors.

Clyne's sole challenge is to the Board's refusal to accept his alcoholism[7] as a mitigating factor. While the Board acknowledged that Clyne was an alcoholic and that the disease "in part led to his undoing", it found no evidence linking Clyne's alcoholism to his unethical behavior and concluded that his drinking problem did not excuse his actions. At the disciplinary hearing, Clyne himself conceded that he was aware of his misrepresentations when he made them, and that he knew it was wrong to lie

---

**5.** Clyne was questioned closely on this point at the hearing on September 7:

Justice Moore: When was the last time you had a drink?

Mr. Clyne: Not since before I went up to High Watch.

Justice Moore: You had no alcohol of any type?

Mr. Clyne: No.

Justice Moore: Have you had any drugs?

Mr. Clyne: No.

Justice Moore: Of any sort?

Mr. Clyne: No, Your Honor.

Justice Moore: *that is the absolute truth and your word to us?*

Mr. Clyne: *Yes.*

Justice Moore: Both statements?

Mr. Clyne: Yes, Your Honor.

Transcript of Supreme Court Hearing, September 7, 1988, at 15–16 (emphasis added).

**6.** Rule 8.1(b) provides: "An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not ... fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admission or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6."

**7.** The Board defined alcoholism (for purposes of this case) as being such involvement with and use of alcoholic beverages as to cause a substantial interference with professional judgment and the performance of professional duties.

to the Court. The Board placed particular emphasis on the misrepresentations Clyne made to this Court *after* he was released from the alcohol abuse treatment center:

> While the Board has the greatest sympathy for the Respondent and this illness that afflicts him, we find that his alcoholism does not excuse his conduct in the several regards that are the subject matter of the petition. The Board makes this finding because of the involved pattern of the Respondent's misrepresentations, their persistence, and the Respondent's resourcefulness in that regard. While the early falsifications to the Court and its staff and the false affidavit may have come at a time when the Respondent's judgment was impaired by alcohol, his conduct recurred several months later on September 7, 1988. In his appearance before the Supreme Court on that date, the Respondent again misrepresented facts about his fitness to practice law, (to wit whether or not he had consumed alcoholic beverages since his release from the treatment program).

> The Board also finds that the Respondent's apparent willingness to recant his lies and be frank with the court has come, in each instance, only when the Respondent was confronted with no other way out.

Recognizing that Clyne's stay in the alcohol abuse treatment center was not totally successful,[8] the Board nevertheless concluded as a matter of fact and law that "the Respondent has a propensity to lie which affects his character and fitness to be a member of the Bar of this Court and ... his age, inexperience and health problems are no excuse for his conduct."

## II.

■ Clyne seeks review only on the narrow question of whether his alcoholism was a mitigating factor in his conduct. With respect to factual matters, we must determine whether the record contains substantial evidence to support the Board's findings. *In re Higgins,* Del.Supr., 565 A.2d 901, 906–07 (1989); *In re Lewis,* Del.Supr., 528 A.2d 1192, 1193 (1987); *In re Kennedy,* Del.Supr., 472 A.2d 1317, 1326, *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2388, 81 L.Ed.2d 346 (1984); *In re Reed,* Del.Supr., 429 A.2d 987, 991 (1981). On questions of law, our scope of review is plenary. *In re Berl,* Del.Supr., 540 A.2d 410, 413 (1988).

Clyne's sole contention is that the Board erred in finding that his alcoholism was not a factor in mitigation here. He argues that other courts have recognized alcoholism as a mitigating factor in attorney disciplinary proceedings and that Delaware should adopt a similar rule as a matter of law. Clyne further maintains that the evidence introduced at the hearing before the Board was sufficient to establish that his misconduct resulted from alcoholism and not from any defect inherent in his character. That evidence apparently consisted of Clyne's testimony that he was consuming twelve to fifteen drinks per day at the time the majority of his transgressions occurred.

Although no Delaware case addresses this specific issue, other courts have noted that alcoholism can be a mitigating factor in some circumstances. *In re Billings,* 50 Cal.3d 358, 267 Cal.Rptr. 319, 324, 787 P.2d 617, 622 (1990) (en banc); *Louisiana State Bar Ass'n v. Dumaine,* La.Supr., 550 So.2d 1197, 1202–03 (1989); *In re Miller,* D.C. App., 553 A.2d 201, 203 (1989); *In re Simonson,* Minn.Supr., 420 N.W.2d 903, 906 (1988) (per curiam); *State ex rel. Nebraska State Bar Ass'n v. Miller,* 225 Neb. 261, 404 N.W.2d 40, 44 (1987) (per curiam); *In re Eads,* 303 Or. 111, 734 P.2d 340, 348 (1987) (en banc); *In re Hanson,* 136 Wis.2d 536, 402 N.W.2d 707, 710 (1987) (per curiam), *cert. denied,* 484 U.S. 858, 108 S.Ct. 169, 98 L.Ed.2d 122 (1987); *In re Rentel,* 107 Wash.2d 276, 729 P.2d 615 (1986) (en banc); *Toledo Bar Ass'n v. DeMars,* 6 Ohio St.3d 12, 450 N.E.2d 1168, 1170 (1983) (per cu-

---

8. Prior to enrolling at the treatment center, Clyne consumed as many as twelve to fifteen drinks a day. He was told at the treatment center that in his condition, he should not drink any alcohol at all. Nevertheless, Clyne admitted that he had imbibed on several occasions after being released, including as recently as one month before the Disciplinary Board hearing on January 24, 1989.

riam); *In re Walker*, S.D.Supr., 254 N.W.2d 452, 457 (1977) (per curiam). *Cf. Attorney Grievance Comm'n of Maryland v. Mandel*, 316 Md. 197, 557 A.2d 1329, 1331 (1989) (addiction to pain killing drug). We agree with that basic concept and principle. No court, however, has held that alcoholism categorically must be considered a mitigating factor in attorney disciplinary proceedings. Each case turns on its own facts.

One of the earliest decisions to hold that alcoholism could be a mitigating factor was *In re Driscoll*, 85 Ill.2d 312, 53 Ill.Dec. 204, 423 N.E.2d 873 (1981). Driscoll had misappropriated client funds during a period of alcoholic dependency. At the time of the disciplinary hearing, however, he had successfully abstained from alcohol for two and a half years and had otherwise led an exemplary life. The Illinois Supreme Court noted that disbarment was ordinarily appropriate when misconduct reflected the attorney's continuing character. Since alcoholism was not merely the occasion of Driscoll's dishonesty but was rather a strong contributing cause of it, the Court concluded that probation was a more appropriate sanction. *Id.* 53 Ill.Dec. at 205–06, 423 N.E.2d at 874–75. The Court noted, however, that "attorneys have been disbarred for misconduct even during a time of insanity or alcoholism where the attorney's behavior after his restoration to sanity confirmed that he was not an honest man, or where there was no detailed evidence to show the attorney's drinking was crucial to his misconduct." *Id.* 53 Ill.Dec. at 205, 423 N.E.2d at 874 (citations omitted).

Following *Driscoll*, courts developed various tests to determine whether alcoholism or other form of drug dependency should be a mitigating factor in cases involving attorney misconduct. In Illinois, to be eligible for probation in cases involving chemical dependency an attorney must demonstrate that he:

(1) can perform legal services and the continued practice of law will not cause the courts or profession to fall into disrepute;

(2) is unlikely to harm the public during the period of rehabilitation and the necessary conditions of probation can be adequately supervised;

(3) has a disability which is temporary or minor and does not require treatment and transfer to inactive status; and

(4) is not guilty of acts warranting disbarment.

Ill.Supr.Ct.R. 772. In Minnesota, courts have adopted the following five criteria to evaluate alcoholism as a mitigating factor:

(1) That the accused attorney is affected by alcoholism.

(2) That the alcoholism caused the misconduct.

(3) That the accused attorney is recovering from alcoholism and from any other disorders which caused or contributed to the misconduct.

(4) That the recovery has arrested the misconduct and the misconduct is not apt to reoccur.

(5) That the accused attorney must establish these criteria by clear and convincing evidence.

*In re Simonson*, 420 N.W.2d at 906 (quoting from *In re Johnson*, Minn.Supr., 322 N.W.2d 616, 618 (1982)). *See also Dumaine*, 550 So.2d at 1202–3 (1989); *In re Eads*, 734 P.2d at 346 n. 17 (1987); *In re Swartwout*, 116 Wis.2d 380, 342 N.W.2d 406, 408 (1984). Still other courts have eschewed formal tests in favor of a simple determination of whether alcoholism caused the misconduct. *See In re Billings*, 787 P.2d at 622 (requiring proof of alcoholism, causation, and recovery); *In re Miller*, 553 A.2d at 203 (requiring proof that alcoholism "substantially affected" the charged misconduct); *In re Hanson*, 402 N.W.2d at 710 (requiring proof of causation). *Cf. Mandel*, 557 A.2d at 1331 (requiring proof of causation).[9]

---

**9.** We note that one question left unresolved by many of the cases is the proper burden of proof to be imposed on an attorney asserting that alcoholism is a mitigating factor. *Compare In re Miller*, 553 A.2d at 203–04 n. 4 (preponderance of the evidence standard) *with Simonson*, 420 N.W.2d at 906 (clear and convincing evidence standard).

We need not formally adopt any of the judicial tests set forth above at this time because Clyne's alcoholism should not be considered a mitigating factor under any set of criteria.[10] He has failed to demonstrate by either a preponderance of or clear and convincing evidence that alcoholism caused his misconduct. Indeed, his defense appears to be only that anyone consuming twelve to fifteen drinks in a day cannot be responsible for his actions. Yet he admits that he was fully aware of what he was doing when he repeatedly lied to this Court, forged a document, and engaged in other fraudulent machinations, all of which he knew were wrong. Under the circumstances, Clyne's numerous deceptions to this Court, some exceptionally contrived, are not mitigated by the fact that he was or is an alcoholic, for he has failed to show that his dependency caused his repeated ethical transgressions. *See In re Johnson,* 114 Wash.2d 737, 790 P.2d 1227 (1990); *In re Hanson,* 402 N.W.2d at 710.

Furthermore, Clyne's repeated deceptions to this Court undermine his assurances of recovery. His perjurious testimony of September 7, 1988 is completely consistent with his prior misrepresentations, and despite repeated warnings not to drink any alcohol at all, Clyne admitted that he drank as recently as one month before the disciplinary hearing. The lack of rehabilitation is a telling issue in this case. The Board concluded that Clyne continued to drink after his month-long treatment, and that his rehabilitative efforts were unsuccessful. When combined with his numerous instances of serious misconduct, the Board was fully warranted in concluding that Clyne was responsible for all charges against him. He provided no evidence sufficient to support his assurance of reform and to offset the gravity of his misconduct. *In re Billings,* 787 P.2d at 622; *In re Eads,* 734 P.2d at 348.

### III.

Having determined that the Board was correct in concluding that Clyne's alco-holism was not a mitigating factor in this case, we must determine the proper sanction to be imposed. This Court has wide latitude in determining the form of discipline to be imposed. *In re Member of the Bar,* Del.Supr., 226 A.2d 705, 707 (1967). The purpose of disciplinary sanctions is to protect the interests of the public, deter the errant lawyer and others from engaging in similar misconduct in the future, and to preserve confidence in the legal system. *See In re Christie,* Del.Supr., 574 A.2d 845, 851 (1990) (per curiam); *In re Kennedy,* 472 A.2d at 1334 (1984); *Dumaine,* 550 So.2d at 1200. In imposing sanctions, this Court gives due consideration to the interests of the individual involved. *In re Christie,* 574 A.2d at 853.

The American Bar Association has developed standards for imposing disciplinary sanctions in which a court considers the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *ABA Standards for Imposing Lawyer Sanctions,* Standard 3.0, at 25 (Approved February, 1986). We are satisfied that the record before us clearly supports the violations found by the Board in this case. *See In re Lewis,* 528 A.2d at 1193. Clyne violated several provisions of the Delaware Rules of Professional Conduct. Those violations are undisputed. Clyne himself testified that he knew he was violating ethical rules and that he knew it was wrong when he did so. Because of these violations, clients were not adequately represented, and they suffered injury from that lack of representation. Moreover, Clyne's misrepresentations to this Court indicate the strong possibility that other clients might be similarly injured in the future.

Turning to aggravating and mitigating factors,[11] we find at least five aggravating

---

**10.** Although we do not formally endorse any of the judicial tests cited above at this time, we believe that they raise questions of importance and may provide a useful framework for analyzing future cases of substance abuse.

**11.** The following may be deemed aggravating factors to be considered in assigning discipli-

factors in this case. The most serious involves Clyne's misrepresentations to this Court and his subsequent attempts to cover up those misrepresentations. That conduct, in the face of inquiries by this Court, reflects a complete abandonment of the fundamental concept of candor that is essential to the continued practice of law. Clyne's subsequent efforts to hide his misrepresentations similarly indicates a dishonest motive and an attempt to obstruct a disciplinary proceeding. It also reflects his refusal to acknowledge the wrongful nature of his conduct. Finally, we observe that while the misrepresentations and attempted cover up are the most serious problems, they are only the culmination of a series of ethical transgressions involving neglect of clients' cases and a total lack of respect for judicial authority. *See Matter of Rich*, Del.Supr., 559 A.2d 1251, 1257 (1989). By contrast, the only mitigating factor is the absence of any prior violations in Clyne's record.

■ Considering the nature and severity of Clyne's actions and the balance of aggravating and mitigating factors, we have no reasonable alternative but to order his disbarment, a most serious sanction. It is normally reserved for cases of misappropriation and other instances when an attorney's conduct poses a continuing danger to the public. *Id.* at 1257–58. This is such a case. Again, the ABA Standards are instructive:

> Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly

withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

*ABA Standards for Imposing Lawyer Sanctions*, Standard 6.11, at 40.

We have previously noted on several occasions: "When there can be no reliance upon the word or oath of a party, he is, manifestly, disqualified, and, when such fact satisfactorily appears, the court[s] not only have the power, but it is their duty to strike the party from the rol[l] of attorneys." *Matter of Sullivan*, Del.Supr., 530 A.2d 1115, 1118 (1987) (per curiam) (quoting from *In re Bennethum*, Del.Supr., 161 A.2d 229, 235 (1960) and *In re Percy*, N.Y. App., 36 N.Y. 651 (1867)). Furthermore, we have stated: "Inattention and negligence in handling matters entrusted to an attorney by clients, and the resort to misleading statements to cover up these deficiencies to the detriment of clients do not measure up to the standards demanded of members of the bar of this State...." *Id.* (quoting from *Eshleman's Case*, 126 N.H. 1, 489 A.2d 571, 573–74 (1985)). Finally, we note that the sanction of disbarment for Clyne is completely consistent with prior decisions in Delaware involving similar misconduct. *See Matter of Rich*, 559 A.2d at 1257; *Matter of Sullivan*, 530 A.2d at 1118; *In re Kennedy*, 503 A.2d at 1209. Indeed, several of Clyne's individual acts of misconduct would justify disbarment. When viewed together, disbarment is clearly mandated.

nary sanctions: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; and (j) indifference to making restitution. *ABA Standards for Imposing Lawyer Sanctions*, Standard 9.22, at 49.

The following may be considered mitigating factors: (a) absence of a prior disciplinary

record; (b) absence of dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical or mental disability or impairment; (i) delay in disciplinary proceedings; (j) interim rehabilitation; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses. *ABA Standards for Imposing Lawyer Sanctions*, Standard 9.32, at 50.

## IV.

This Court does not treat lightly its officers who violate their fundamental duties to the Court, the legal community, and society. Clyne has not shown that he is able to adequately meet the high standards demanded of the legal profession. Although he has shown that he was an alcoholic when many of the unethical acts occurred, he has failed to show that alcoholism was the cause of his dishonesty or that he has been completely rehabilitated. Without such fundamental proof, we see no basis in law or in fact to find that Clyne's alcoholism was a mitigating factor here.

Under our exclusive jurisdiction over the Bar of Delaware, IT IS ORDERED that John P. Clyne, Jr., be disbarred from membership in the Delaware Bar. His name shall be immediately stricken from the Roll of Attorneys entitled to practice before the courts of this State.