In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware: Andrew A. GREENE, Jr., Respondent.

No. 80, 1997.

Supreme Court of Delaware.

Submitted: Sept. 23, 1997.

Decided: Oct. 23, 1997.

Donald E. Pease, Widener University School of Law, Wilmington, for Respondent.

David Curtis Glebe, Chief Counsel, Office of Disciplinary Counsel, Wilmington, for Office of Disciplinary Counsel.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

PER CURIAM:

In this proceeding, the Court reviews a report of the Board on Professional Responsibility ("Board") directed to a petition for discipline filed by the Office of Disciplinary Counsel ("ODC") against the Respondent, Andrew A. Greene, Jr. ("Greene"), a member of the Delaware Bar. The Board concluded, after a hearing, that Greene had committed various violations of the Rules of Professional Conduct, including the misappropriation of clients' funds, and recommended disbarment. Although Greene essentially admits the underlying conduct, he contends that the sanction of disbarment is unduly severe given his significant effort at rehabilitation. While we recognize the presence of significant mitigating factors here and the excellent presentation to the Court by Respondent's counsel, we agree with the Board's findings and the recommendation of disbarment.

I

Greene was charged with seven violations of the Delaware Lawyers' Rules of Professional Conduct ("DLRPC") for: (1) lack of competence in violation of Rule 1.1; (2) lack of diligence in violation of Rule 1.3; (3) commingling of property in violation of Rule 1.15(a); (4) failure to deliver property in violation of Rule 1.15(b); (5) failure to deliver and maintain books and records in violation of Rule 1.15(d); (6) engaging in criminal conduct in violation of Rule 8.4(b); and (7) engaging in dishonest conduct in violation of Rule 8.4(c).

Greene filed an answer admitting to six counts of the factual allegations, except the

charge that he failed to remit certain funds, in the form of services fees, to a title insurance company.

The Board's findings of fact, in pertinent part, may be summarized as follows:

(1) Greene, a member of the Delaware Bar since 1986, has been addicted to cocaine for over ten years.

(2) Greene was engaged in the private practice of law with an office at his residence in Wilmington, as a sole practitioner since May 1994. He had no support staff and engaged an out-of-the-office secretary on a per case basis. He was an associate at a law firm from September 1993 to May 1994. During the previous five years, he had not practiced law but was employed by a Pennsylvania realty company.

(3) In connection with several real estate settlements (the "Settlements") conducted by Green during 1994, as an attorney acting in association with Ticor Title Insurance Company ("Ticor"), Greene misappropriated for his personal purposes over $52,000 in escrowed fiduciary funds. This sum was ultimately repaid by Greene from funds made available by his family.

(4) In connection with the Settlements, Greene failed to properly conduct and close several transactions, failed to properly record the documents related to such transactions, and failed to pay proper recording fees and related transfer taxes. This conduct was apparently in furtherance of Greene's misappropriation of clients' funds.

(5) In connection with the Settlements, Greene failed to remit to Ticor over $1,200 in title company service fees. Greene also misrepresented facts concerning his role in connection with the Settlements to Ticor, to the lending institutions involved with the Settlements, to a seller, and to Martin Zukoff, the accountant for the Lawyers' Fund for Client Protection. These misrepresentations were done to conceal his conduct in misappropriating client funds.

(6) During the conduct of his law practice in 1994, Greene deposited fiduciary funds from a non-real estate matter directly into his operating account and withdrew funds for his own purposes directly therefrom.

(7) Greene disposed of all the real estate escrow account canceled checks, check books, and documents relating to a settlement that occurred on October 31, 1994.

(8) During these relevant times, Greene was carrying on and conducting a practice with many clients and conducting other types of transactions as a sole practitioner.

(9) An audit conducted on behalf of the Lawyers' Fund for Client Protection estimated the sum appropriated by Greene to be approximately $53,000. The amount of funds which were later verified as missing proved to be $47,000.

(10) On April 20, 1995, the Delaware Supreme Court entered an order suspending Greene from the practice of law pending disciplinary proceedings.

(11) Greene entered a plea of guilty to an information charging him with felony theft of over $500 under 11 *Del.C.* § 841. He was sentenced July 12, 1996 in the Superior Court to pay a fine of $1,000 and to serve a brief term of imprisonment followed by probation.

(12) Greene presented expert testimony concerning his drug addiction from a certified addiction counselor. The counselor was of the view that, despite Greene's relapse when he was disciplined in 1990, he was not then sincere in his rehabilitation efforts. The counselor believed that, in two to three years, Greene would achieve full recovery, but remain dependent. In the event Greene was permitted to practice law in the future, the counselor recommended that he should not be put into a position where he had access to money. The Board considered the counselor's testimony as providing a reason, but not an excuse, for Greene's conduct.

(13) The Board found the evidence to have established that Greene violated DLRPC 1.1 for lack of competence and DLRPC 1.3 for lack of diligence. Greene improperly delayed recording of deeds and mortgages arising out of at least three real estate settlements conducted by him in 1994. Greene also did not maintain, on a current basis, books and records of ac-

counts or to preserve those records as required under DLRPC 1.15 and admitted to disposing of books and records dealing with a settlement that occurred in 1994.

(14) The Board, applying sections 9.2 and 9.3 of the American Bar Association Standards governing lawyer sanctions, determined that the following aggravating factors exist: (1) Greene had a prior record of discipline for acts of dishonesty; (2) he had a criminal conviction of felony theft; (3) his use of clients' funds presented a pattern of misconduct involving various entities; and (4) the victims in the mishandling of funds in real estate transactions were vulnerable.

(15) In mitigation, the Board noted the following factors: (1) Greene's inexperience in the practice of law; (2) his personal and emotional problems relating to his drug addiction; (3) his eventual, but not initial, cooperation with the disciplinary process; (4) his interim rehabilitation; (5) the imposition of other penalties or sanctions for his criminal conviction; and (6) his remorse.

(16) In concluding that the aggravating factors outweighed the mitigating factors, the Board rejected Greene's argument that suspension was appropriate because he was undergoing successful drug rehabilitation. The Board noted that, while chemical dependency is a contributing factor in Greene's misdeeds and he has made restitution, these mitigating factors do not outweigh the fact that Greene has violated one of the most basic professional obligations to the public—the pledge to maintain personal honesty and integrity. The Board submitted that disbarring Greene is warranted in order to protect the public, to foster public confidence in the Bar, to preserve the integrity of the profession, and to deter other lawyers from such conduct.

## II

■ In our review of reports of the Board on Professional Responsibility in lawyer disciplinary matters, we consider the Board's factual finding under a substantial evidence standard. *Matter of Lewis*, Del. Supr., 528 A.2d 1192, 1193 (1987). The

Board's conclusions of law, including its recommendation of sanctions, are subject to *de novo* review. *Matter of Berl*, Del.Supr., 540 A.2d 410, 413 (1988).

Greene does not dispute the essential findings of the Board to the effect that: (i) he misappropriated clients' funds in the amount of $47,000; (ii) he concealed the defalcations by failing to record documents and satisfy liens; and (iii) he failed to maintain his financial records as required by disciplinary standards. His principal dispute with the Board's report is that its recommended sanction fails to recognize the mitigating effect of Greene's addiction and his efforts at rehabilitation. Greene also complains that the Board seemed to have adopted a sanction rationale that presumes that cases of lawyer dishonesty in Delaware automatically warrant disbarment.

■ We have carefully and independently reviewed the evidence in this record concerning Greene's addiction and rehabilitative efforts and the extent they may mitigate his conduct. The evidence offered by Greene at the hearing before the Board concerning the basis for, and the prospects of recovery from, his drug addiction was forceful and sympathetic. Greene's addiction is longstanding and has played a significant part in his disciplinary history. We agree with the Board, however, that his addiction only provides an explanation for and does not excuse his conduct. *Matter of Clyne*, Del.Supr., 581 A.2d 1118 (1990). Presumably, Greene's plea of guilty to a charge of intentional criminal theft would neither have been tendered, nor accepted, if his conduct was not the product of the requisite mental state. *See* 11 *Del.C.* § 251(a) ("No person may be found guilty of a criminal offense without proof of the state of mind required by the law defining the offense...."). Because Greene has not moved to withdraw his plea of guilty, or suggested it was entered without understanding its consequences, we are entitled to assume, for disciplinary purposes, that his conduct was intentional.

To the extent Greene offers his drug addiction history as mitigation, we are willing to recognize his significant effort at rehabili-

tation. At the same time, we note that his longstanding addiction led him to previous disciplinary problems, including acts of dishonesty, for which he received lenient treatment in the form of a private admonition. Both the Board and this Court have offered Greene the opportunity to maintain his professional status, but the result has been further harm to the public.

 Greene's argument that the Board adopted a *per se* rule calling for disbarment in all cases of misappropriation of client's funds is not supportable. The Board's function in the area of sanctions is one of recommendation. This Court bears the ultimate responsibility for the imposition of sanctions. As the Board noted, this Court has not adopted a *per se* rule but has attempted to adopt a policy that is consistent with, and protective of, the public interest whenever a lawyer has converted public funds. That policy, as set forth in *Matter of Dorsey,* Del.Supr., 683 A.2d 1046, 1048 (1996), bears repeating:

> The theft of clients' funds is one of the most serious ethical violations a lawyer can commit. The *ABA Standards for Impos-*

*ing Lawyer Sanctions,* provides that disbarment is 'generally appropriate when a lawyer engages in serious criminal conduct a necessary element of which includes ... misappropriation, or theft.' Section 5.11(a).

683 A.2d at 1049.

Based on our evaluation of the aggravating and mitigating factors affecting Greene's conduct, we are satisfied that disbarment is required in order to protect the public and to serve as a continued determent to the legal profession.

The recommendation of the Board is accepted and IT IS ORDERED that Andrew A. Greene, Jr. be disbarred from membership in the Delaware Bar and his name stricken from the Roll of Attorneys entitled to practice before the Courts of this State.