### In the Matter of a Member of the Bar of the Supreme Court, of the State of Delaware,

### Bradley J. ENNA, Respondent.

### No. 628, 2008.

Supreme Court of Delaware.

Submitted: Feb. 25, 2009.
Decided: April 20, 2009.

---

**39.** *Id.*

Patricia Bartley Schwartz, Esquire, Office of Disciplinary Counsel, Wilmington.

Charles Slanina, Esquire, of Finger, Slanina & Liebesman, LLC, Hockessin, for Respondent.

Before BERGER, JACOBS and RIDGELY, Justices.

PER CURIAM:

This is an attorney disciplinary proceeding. The Board on Professional Responsibility (the "Board") conducted a hearing and issued a Report recommending that Bradley J. Enna be disbarred. A copy of that Report is attached and incorporated herein. Enna objects to the Board's recommended sanction, arguing that the Board mistakenly accepted facts alleged in various indictments and that the Board failed to accept the undisputed evidence that his criminal conduct was the result of two brain injuries. Enna contends that an appropriate sanction would be a period of suspension.

 This Court has the "inherent and exclusive authority" to discipline Delaware attorneys.[1] Disciplinary proceedings are intended, "to protect the public; to foster public confidence in the Bar; to preserve the integrity of the profession; and to deter other lawyers from similar misconduct."[2] In deciding upon an appropriate sanction, this Court considers: "(i) the nature of the duty violated; (ii) the lawyer's mental state; (iii) the actual/potential injury caused by the conduct; and (iv) the existence of aggravating and mitigating circumstances."[3] The Board's recommendation is helpful, but not binding.[4]

Enna stipulated that he was convicted of multiple misdemeanors and two felonies, including falsifying evidence, terrorizing,

---

1. *In re Shamers,* 873 A.2d 1089, 1096 (Del. 2005).

2. *In re Agostini,* 632 A.2d 80, 81 (Del.1993).

3. *In re Tenenbaum,* 918 A.2d 1109, 1114 (Del. 2007).

4. *In re Thompson,* 911 A.2d 373, 376 (Del. 2006).

assault, violation of condition of release, and violation of protection from abuse order. He also stipulated that his criminal conduct violated Rules 3.4(a), 3.4(c) 8.4(b), 8.4(c) and 8.4(d) of the Delaware Lawyers' Rules of Professional Conduct. Enna does not dispute that his wife was the victim of his crimes, or that his minor children witnessed the altercations. Rather, he focuses on the fact that he suffered serious brain injuries in a car accident and had no criminal record before the accident. He contends that his medical evidence establishes that his brain injuries caused his criminal behavior. In addition, Enna argues that he did not use any weapons when assaulting his wife, and that the Board erred in so finding.

After carefully considering the Report and Enna's objections, we conclude that disbarment is the appropriate sanction. The medical evidence does not address his mental state at the time of the crimes, and there is nothing in the record to suggest that Enna raised any defense to those crimes based on his claimed infirmity. On the second point, it is irrelevant whether Enna threatened his wife with a screwdriver or knife, or he threatened her with some other object. He was convicted of multiple crimes, including two felonies,[5] involving a vulnerable victim.

NOW, THEREFORE, IT IS ORDERED that:

1) The respondent, Bradley J. Enna, is permanently disbarred from the Bar of the State of Delaware and prohibited from engaging in the practice of law;

2) The respondent shall pay the costs of these disciplinary proceedings, pursuant to Rule 27 of the Delaware Lawyers' Rules of Disciplinary Procedure, promptly upon

presentation of a statement of costs by the Office of Disciplinary Counsel (the "ODC"); and

3) This Order shall be disseminated by the ODC in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

## ATTACHMENT

## BOARD ON PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF THE STATE OF DELAWARE

### BOARD CASE NO. 44, 2008

IN THE MATTER OF A MEMBER OF THE BAR OF THE SUPREME COURT OF DELAWARE:

BRADLEY J. ENNA, RESPONDENT

### *REPORT OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

This is the report of the findings and recommendations of the Board on Professional Responsibility of the Supreme Court of the State of Delaware in the above captioned matter. A hearing was held on October 2, 2008, in the Supreme Court Hearing Room, 11th Floor, Carvel State Office Building, 820 North French Street, Wilmington, Delaware.

The panel of the Board on Professional Responsibility consisted of Mark L. Reardon, Esq., Dr. Yvonne Anders Gordon, and David N. Rutt, Esq. (Chair). The Office of Disciplinary Counsel ("ODC") was represented by Patricia Bartley Schwartz, Esq. and Andrea L. Rocanelii, Esq. Respondent was represented by Charles Slanina, Esq. of the firm of Finger & Slanina, LLC.

---

**5.** Enna points out that his felony convictions were dismissed two years later, pursuant to a deferred disposition agreement. That has no bearing on these proceedings. The salient fact is that he was convicted or pled guilty to those crimes, and does not challenge the validity of those judicial proceedings.

## I. PROCEDURAL HISTORY

The ODC filed a Petition for Discipline ("the Petition") with the Board on Professional Responsibility of the Supreme Court of the State of Delaware ("the Board") on May 7, 2008. As hereinafter set forth, the ODC asserted in the Petition that Bradley J. Enna, Esq. ("Respondent") committed numerous criminal acts in the State of Maine. The Petition set forth nineteen (19) separate counts alleging the Respondent's violation of Rule 3.4(a) (one count), Rule 3.4(c) (four counts), Rule 8.4(b) (eight counts), Rule 8.4(c) (one count), and Rule 8.4(d) (five counts) of the Delaware Lawyers Rules of Professional Conduct (the "Rules"). Respondent filed an Answer to the Petition on May 27, 2008. In Respondent's Answer certain of the allegations were denied. However, at the commencement of the October 2, 2008 hearing, Respondent's counsel filed an Amended Answer to the Petition which admitted all of the violations of the Rules. (T: 3)[1] The Amended Answer did deny some of the characterizations of the incidents which formed the basis of the Petition, but Respondent did admit that the incidents did occur and that as a result, the Rules were violated. Thus, the hearing of October 2, 2008 was conducted as a sanctions hearing.

Prior to the filing of the ODC Petition, the Supreme Court of the State of Delaware issued an Order dated April 30, 2007. The Court immediately suspended Respondent from the practice of law in the State of Delaware pending disposition of this matter finding that there was sufficient evidence demonstrating that Respondent had committed violations of the Rules.

Counsel for ODC offered thirteen (13) exhibits into the record, all of which were admitted.[2] Counsel for Respondent offered two (2) exhibits, both of which were admitted.[3] ODC did not offer any witnesses. Respondent testified on his own behalf and called as witnesses: David A. Harris, Esq., a member of the Bar of the State of Delaware, Francis Jackson, Esq., a member of the Bar of the State of Maine, Francis Giuliano, a member of the Bar of the State of New Jersey, and Carol Tavani, M.D., a physician licensed to practice in the State of Delaware, who is a Board-certified neuropsychiatrist.

At the conclusion of the hearing, closing arguments were offered by counsel for ODC and Respondent, respectively. In addition, the Panel was provided copies of the cases upon which the parties relied in making their arguments. Counsel for ODC argued that the proper sanctions for the violations admitted to by Respondent was disbarment (T: 252.) Counsel for Respondent urged the Panel to recommend to the Court a six-month suspension retroactive to the Court's Order of April 30, 2007. (T: 274.)

## II. THE ALLEGED VIOLATIONS OF PROFESSIONAL CONDUCT

### A. *Criminal Indictments in the State of Maine Giving Rise to Violations of the Rules*

#### (1) *Indictment Docket No. 06–26:*

The Petition alleges that on January 4, 2006, Respondent and his wife argued during which there was a physical altercation. At the time, Respondent and his wife were in the early stages of a divorce proceeding

---

1. (T: ——.): Reference to Hearing Transcript of October 2, 2008 hearing.

2. Exhibits of ODC shall be referenced as ODC ——.

3. Exhibits of Respondent shall be referenced as Resp. ——.

and were attempting to reconcile. Specifically, the Petition alleges that Respondent held a knife to his wife's throat and threatened to kill her. When she escaped, he caught her and punched her in the stomach repeatedly in front of three of their children, all of whom were minors at the time. Ms. Enna had a tape recorder on her person which Respondent discovered during the altercation. It is alleged that he took the tape recorder and the tape to another room where it was destroyed. The police were called by Ms. Enna. When they arrived, they found the tape recorder smashed, noticed a burning odor, but could not find the tape. (Petition ¶ 5.) Respondent in his Amended Answer denied the description of those offenses as contained in ODC's Petition for Discipline.

As a result of this incident, Respondent was charged with the following crimes:

(i) Criminal Threatening With A Deadly Weapon (a Class C felony);

(ii) Assault With A Deadly Weapon (a Class C felony);

(iii) Falsifying Physical Evidence (a Class D misdemeanor);

(iv) Terrorizing (a Class D misdemeanor); and

(v) Assault (a Class D misdemeanor). (ODC-2.)

On March 15, 2007, Respondent entered a plea of *nolo contendere* to the counts of Falsifying Physical Evidence, Terrorizing and Assault, all Class D misdemeanors. (ODC-3.)

### 2. *Indictment No. 06-414 (formerly 06-54):*

The Petition alleges that as a result of the January 4, 2006 incident set forth above, Ms. Enna obtained a Protection From Abuse Order against Respondent, (Petition ¶ 20.) The Order contained a provision that as a condition of Respondent's release that he have no contact with his spouse. On January 19, 2006, Respondent telephoned Ms. Enna in violation of this Order. As a result of Respondent's conduct, an indictment was issued against him on two counts. (Petition ¶ 22; ODC-4.) They were:

(i) Violation of Condition of Release (Class C felony); and

(ii) Violation Of Protection From Abuse Order (Class D misdemeanor).

Respondent has admitted to the facts set forth in the Petition regarding the incident and the counts in the indictment.

On March 15, 2007, Respondent pled guilty to the violation of Protection From Abuse, a Class D misdemeanor. On the same date, he pled guilty by way of an Alford plea of the violation of Condition of Release, a Class C felony. (Amended Answer ¶ 23.)

### 3. *Indictment Docket 06-633:*

The Petition alleges that on February 28, 2006, Ms. Enna arrived at her home with two of her children. Respondent was waiting at the home and approached the vehicle when Ms. Enna arrived. The Petition alleges that Respondent pounded on the vehicle with an object Ms. Enna believed was either a knife or a screwdriver and stabbed at the vehicle's tires. Ms. Enna escaped with her children and drove to the Police Department. (Petition ¶ 36.) Respondent's answer to the allegations was, "Denied as stated. By way of further answer, Respondent entered guilty pleas as described...." (Amended Answer ¶ 36.)

As a result of Respondent's conduct on February 28, 2006, a Grand Jury for the State of Maine on March 9, 2006 indicted Respondent on three counts (ODC-7) as follows:

(i) Violation Of Condition Of Release (a Class C felony);

(ii) Violation Of Protection From Abuse Order (a Class D misdemeanor); and

(iii) Criminal Trespassing (a Class D misdemeanor).

On March 15, 2007, Respondent pled guilty to and was convicted of a Violation Of Protection From Abuse Order and Criminal Trespassing, both Class D misdemeanors. (ODC–8.) On the same day, Respondent pled guilty by way of an Alford plea of the Violation of Condition Of Release. (ODC–6.)

### 4. *Summary:*

Respondent entered a plea of *nolo contendere* to three (3) Class D misdemeanors. He pled guilty to three (3) other Class D misdemeanors. And, he entered Alford pleas to two (2) Class C felonies.

### B. *Rules Violated.*

### 1. *Respondent Has Violated Rule 3.4(a):*

■ Rule 3.4(a) provides in part that "a lawyer shall not unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act." The Petition alleges in Count I one violation of this Rule to which Respondent has admitted. (Petition, p. 3.) Indictment Docket 06–26 contained a count for Falsifying Physical Evidence, a Class D misdemeanor. Respondent pled *nolo contendere* to the crime and has admitted that his actions were in violation of Rule 3.4(a). (Amended Petition ¶ 9.)

### 2. *Respondent Has Violated Rule 3.4(c):*

Rules 3.4(c) provides in part that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal." The Petition alleges Respondent violated this Rule on four counts.

■ In Count VII of the Petition, ODC alleged that by telephoning Ms. Enna on January 19, 2006, Respondent violated Rule 34(c) because he was in violation of the Protection From Abuse Order issued by the Court of the State of Maine. (Petition ¶ 25.) Respondent was indicted for this in indictment Docket No. 06–414. (ODC–4.) Respondent pled guilty to this Class D misdemeanor and has admitted his violation in his Amended Answer. (Amended Answer ¶ 25; ODC–5.)

■ Count VIII of the Petition alleged that when Respondent telephoned his spouse on January 19, 2006, he was in Violation Of A Condition Of His Release On Bail. (Petition ¶ 27.) Respondent was indicted in Indictment Docket No. 06–414 for this crime. Respondent entered an Alford plea of guilty and has admitted the violation of Rule 3.4(c) in his Amended Answer. (Amended Answer ¶ 27.)

■ Count XIII of the Petition alleged that when Respondent attacked his wife's vehicle he was in violation of the Protection From Abuse Order entered by the Courts of the State of Maine. (Petition ¶ 40.) He was indicted of this crime in Indictment Docket No. 06–633. Respondent pled guilty to the crime and admitted in his Amended Answer that he was in Violation of the Protection From Abuse Order and thus in violation of Rule 3.4(c). (Amended Answer ¶ 40.; ODC–8.)

Count XIV of the Petition alleged that Respondent by attacking his wife's vehicle was in Violation Of A Condition Of His Release On Bail. (Petition ¶ 42.) He was

indicted for this crime in Indictment Docket No. 06–633. (ODC–7.) Respondent entered an Alford plea of guilty on this Class C felony and has admitted in his Amended Answer that he is in violation of 3.4(c). (Amended Answer ¶ 42; ODC–8.)

### 3. *Respondent is in Violation of Rule 8.4(b):*

Rule 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The Petition alleged eight counts where Respondent violated Rule 8.4(b).

■ Count II alleged that Respondent violated Rule 8.4(b) by destroying the audio tape for which he was indicted in Indictment Docket No. 06–26 for falsifying physical evidence, a Class D misdemeanor. (Answer ¶ 11; ODC–2.) Respondent pled *nolo contendere* to this count and thus has admitted that he is in violation of Rule 8.4(b). (Amended Answer ¶ 11; ODC–3.)

■ Count III of the Petition alleged that Respondent engaged in a criminal act by terrorizing his wife, a Class D misdemeanor. (Petition ¶ 13.) Respondent was indicted of Terrorizing in Indictment Docket No. 06–26. (ODC–2.) Respondent pled *nolo contendere* to this count and thus has admitted he is in violation of Rule 8.4(b). (Amended Answer ¶ 13; ODC–3.)

■ Count IV of the Petition alleged that Respondent engaged in a criminal act by assaulting his wife, a Class D misdemeanor. (Petition ¶ 15.) Respondent was indicted of Assault in Indictment Docket No. 06–26. (ODC–2.) Respondent pled *nolo contendere* to this count and thus has admitted he is in violation of Rule 8.4(b). (Amended Answer ¶ 15; ODC–3.)

■ Count IX of the Petition alleged that when Respondent telephoned his wife on January 19, 2006 he engaged in criminal conduct consisting of the offense of Violation Of Protection From Abuse. (Petition ¶ 29.) He was indicted on this offense in Indictment Docket No. 06–414. (ODC–4.) Respondent pled guilty to this Class D misdemeanor and thus has admitted he is in violation of Rule 8.4(b). (Amended Answer 29; ODC–5.)

■ Count X of the Petition alleged that when Respondent telephoned his wife on January 19, 2006, he engaged in criminal conduct consisting of the offense of Violation of Condition Of Release, a Class C felony. (Petition ¶ 31.) Respondent entered an Alford plea on that count and thus has admitted he is in violation of Rule 8.4(b). (Amended Answer ¶ 31; ODC–6.)

■ Count XV of the Petition alleged that when Respondent attacked his wife's vehicle he was in violation of the Protection From Abuse Order entered by the Courts of the State of Maine. (Petition ¶ 44.) He was indicted of this crime in Indictment Docket No. 06–633. (ODC–7.) Respondent pled guilty to the crime and admitted in his Amended Answer that he was in violation of the PFA Order and thus has admitted he is in violation of Rule 8.4(b). (Amended Answer ¶ 44; ODC–8.)

■ Count XVI of the Petition alleged that when Respondent attacked his wife's vehicle he was engaged in a criminal act of Criminal Threatening. (Petition ¶ 46.) He was indicted for this crime in Indictment Docket No. 06–633. (ODC–7.) Respondent pled guilty to this Class D misdemeanor and thus and thus has admitted that he is in violation of 8.4(b).

■ Count XVII of the Petition alleged that Respondent by attacking his wife's vehicle was in Violation Of A Condition Of His Release On Bail. (Petition ¶ 48.) He

was indicted for this crime in Indictment Docket No. 06–633. (ODC–7.) Respondent entered an Alford plea of guilty on this Class C felony and thus has admitted he is in violation of 8.4(b). (Amended Answer ¶ 48.) (Amended Answer ¶ 36.)

#### 4. *Respondent is in Violation of Rule 8.4(c):*

Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." ODC alleges that Respondent violated this Rule on one count.

Count V of the Petition alleged that Respondent engaged in conduct resulting in conviction for falsifying physical evidence, a crime involving fraud, deceit and/or misrepresentation. (Petition ¶ 17.) Respondent was indicted of the crime of Falsifying Physical Evidence, a Class C misdemeanor in Indictment Docket No. 06–26. (ODC–2.) Respondent pled nolo contendere to this crime and in his Amended Answer has admitted to violating Rule 8.4(c). (Amended Answer ¶ 17; ODC–3.)

#### 5. *Respondent is in Violation of Rule 8.4(d):*

Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The ODC has alleged that Respondent has violated Rule 8.4(d) on five counts.

Count VI alleged that Respondent violated Rule 8.4(d) by destroying the audio tape for which he was in indicted in Indictment Docket No, 06–26 for falsifying physical evidence, a Class D misdemeanor. (Petition ¶ 19; ODC–2) Respondent pled *nolo contendere* to this count and thus has

admitted he is in violation of Rule 8.4(d). (Amended Answer ¶ 19; ODC–3.)

Count XI of the Petition alleged that when Respondent attacked his wife's vehicle he was in violation of the Protection From Abuse Order entered by the Courts of the State of Maine. (Petition ¶ 29.) He was indicted of this crime in Indictment Docket No. 06–633. (ODC–7.) Respondent pled guilty to the crime and admitted in his Amended Answer that he was in violation of the PFA Order and thus has admitted he is in violation of Rule 8.4(d). (Amended Answer ¶ 29.)

Count XII of the Petition alleged that when Respondent telephoned his wife on January 19, 2006 he engaged in criminal conduct consisting of the offense of Violation of Condition Of Release, a Class C felony. (Petition ¶ 35.) Respondent was indicted for this crime in Indictment Docket No. 06–414. (ODC–4.) Respondent entered an Alford plea on that count and thus admitted he was in violation of Rule 8.4(d). (Amended Answer ¶ 35.)

Count XVIII of the Petition alleged that when Respondent attacked his wife's vehicle he was in Violation of the Protection From Abuse Order entered by the Courts of the State of Maine. (Petition ¶ 50.) He was indicted of this crime in Indictment Docket No. 06–633. (ODC–7.) Respondent pled guilty to the crime and admitted in his Amended Answer that he was in violation of the PFA Order and thus has admitted he is in violation of Rule 8.4(d). (Amended Answer ¶ 50.)

Count XIX of the Petition alleges that Respondent by attacking his wife's vehicle was in Violation of A Condition Of His Release On Bail. (Petition ¶ 52.) He was indicted for this crime in indictment Docket No. 06–633. (ODC–7.) Respondent entered an Alford plea of guilty on this Class C felony and thus has admitted

he is in violation of 8.4(d). (Amended Answer ¶ 52.)

## III. FACTUAL FINDINGS OF THE BOARD

(1) Respondent is a member of the Bar of the Supreme Court of the State of Delaware, having been admitted in 1996. (Petition, Amended Answer ¶ 1.)

(2) Respondent was engaged in the private practice of law from the time of his admission until May, 2003, at which time he stopped practicing due to a medical disability. (T: 42.)

(3) On July 31, 2002, Respondent was struck by a motor vehicle while crossing a street in the City of Wilmington, Delaware. He was diagnosed with traumatic brain injury with numerous physical after effects. His physical symptoms resolved within six to twelve months. However, the brain injury and his mental and cognitive effects remained symptomatic after his physical injuries had healed. (T: 40–41.)

(4) Subsequent to Respondent's discontinuation of private practice in May, 2003, Respondent continued receiving treatment for his cognitive disorder. The extent of his treatment is not evident from the record. Respondent testified he had seen numerous physicians all of whom told him his cognitive deficiencies would be permanent, They treated him with various medications which were of little benefit to him. Respondent testified he became depressed. (T: 47–48.)

(5) Between May, 2003 and January, 2005, Respondent's family relocated to the State of Maine. (T. 49.) Respondent followed shortly thereafter. Respondent and his wife were attempting to reconcile differences that had arisen between them. On January 4, 2006, Respondent was living in the marital home. (T: 123.)

(6) On January 4, 2006, Respondent and his wife were arguing in the presence of three of their minor children. The argument escalated and Respondent became aware that his wife had a tape recorder and tape and was recording the argument. Respondent put a knife to his wife's throat and demanded she give him the tape. Respondent's wife was able to escape but Respondent caught her and punched her in the stomach numerous times and took the tape from her. Respondent went to another room in the house while at the same time Respondent's wife called the police, who upon arriving at the house found the tape recorder smashed and the odor of something that had burned. The police could not locate the tape. Respondent was removed from the house by the police. (ODC–2; T: 54–56.)

(7) As a result of this altercation, Respondent was indicted on five counts by a Grand Jury sitting in the State of Maine. (ODC–2.) The five counts were:

(i) Criminal Threatening With A Deadly Weapon (a Class C felony);

(ii) Assault With A Deadly Weapon (a Class C felony);

(iii) Falsifying Physical Evidence (a Class D misdemeanor);

(iv) Terrorizing (a Class D misdemeanor); and

(v) Assault (a Class D misdemeanor).

Respondent pled *nolo contendere* to counts (iii), (iv) and (v). Counts (i) and (ii) were dismissed. (ODC–3.) The plea was entered on March 15, 2007. (ODC–6.)

(8) Immediately after the incident on January 4, 2006, Respondent's wife obtained a Protection From Abuse Order from the Maine Courts. (T: 56.) Respondent was to have no contact with his wife nor his children. (T: 57.)

(9) On January 19, 2006, Respondent called his wife on the telephone. Respondent was aware that this telephone call was in violation of the terms of the Protection From Abuse Order. (Petition, Amended Answer ¶ 21.)

(10) On March 9, 2006, the Grand Jury in the State of Maine indicted Respondent on two counts. (ODC–4.) Count I was a Violation Of Condition Of Release On Bail which required that he have no contact with his spouse. This was a Class C felony. Count II was a Violation Of The Protection From Abuse Order. This was a Class D misdemeanor. Respondent pled guilty by way of an Alford plea to Counts I and plead guilty to Count II on March 15, 2007. (ODC–6.)

(11) On February 3, 2006, Respondent consumed all of the medications he had available to him in an apparent suicide attempt. (T: 58.) Respondent testified he was asleep for two days, after which he did not seek immediate medical treatment. (T: 114–115.)

(12) On February 8, 2006, Respondent had an arbitration hearing in Wilmington, Delaware in regard to his insurance claim arising from his July, 2002 motor vehicle accident. (T: 59.) Respondent testified he drove himself to the airport in Maine and flew to Philadelphia to attend the arbitration. He was able to testify and participate in the arbitration proceeding. As a result of the arbitration, Respondent received a substantial arbitration award. (T: 116.)

(13) On February 9, 2006, Respondent met with his psychiatrist, Dr. Burton Weiss, in Philadelphia. (T: 59.) The notes prepared by Dr. Weiss of his evaluation of Respondent indicate that the Respondent was seeing him for "depression, suicide attempt, suicidal ideas." (ODC–9.) In his Interval History, Dr. Weiss related that Respondent "returned for urgent appointment from Maine." Respondent related that he had stopped taking medications a month ago and had become progressively more depressed. He further related that on February 4, 2006, he had taken all of the medications he was then saving in an attempt to kill himself. The Interval History makes no mention of the fact that Respondent had returned to Wilmington for an arbitration hearing the day prior to seeing Dr. Weiss nor is there a mention of his arrest and indictments. The Mental Status Examination of Dr. Weiss found that Respondent was "alert and cooperative." Dr. Weiss did conclude that "(Respondent) has cognitive, memory and behavior control deficits which are the arising (sic) from his accident of 7/31/02." Dr. Weiss suggested immediate hospitalization of Respondent to Friend's Hospital for psychiatric evaluation.

(14) Respondent was admitted to Friend's Hospital in Philadelphia, Pennsylvania on February 9, 2006. (ODC–10.) It was noted on discharge "he still continued to struggle with complications of his mental problems from his traumatic brain injury. By discharge, he was free from suicidal ideations and highly motivated for out

patient treatment." After discharge from Friend's Hospital, Respondent returned to the State of Maine. (T: 61.)

(15) On February 28, 2006, Respondent went to the marital home and waited outside for his wife, who was not home at the time, to return. (ODC–7.) When his wife returned home, she had with her two of their minor children. Respondent approached the car and according to his wife, began pounding on the car and was holding a long, sharp object which she believed was either a knife or a screwdriver. Respondent's wife stated that Respondent attempted to stab the tires of the car. She was able to leave in her vehicle and immediately drove to the police station. (Petition ¶ 36.) Respondent does not dispute the fact that he went to the marital home. (T: 66.) He does dispute the characterization of the confrontation with his spouse. (T: 66.)

(16) On March 1, 2006, Respondent admitted himself to Portsmouth Regional Hospital, Portsmouth, New Hampshire. (ODC–11.) He related his history of injury and disability to the admitting physician. He also related the accusations of his wife regarding the confrontation of January 4, 2006 though he denied the characterization. Respondent also related that after discharge from Friend's Hospital he had gone back to Maine to talk to his wife "which clearly was a violation of the restraining order." The Portsmouth Hospital Discharge Summary states, "The psychiatrist who had worked with him for a number of years as an out patient in the area the patient had been living in in Pennsylvania expressed quite a bit of concerns about the patient's potential for dangerousness to suffer others. He also gave us a sense that the patient had had some significant problems, perhaps personality-wise, prior to his brain injury." During his hospitalization, the physicians developed further information regarding Respondent through conversations with Respondent's criminal attorney. The physicians at Portsmouth Regional Hospital determined they had a duty to warn his spouse upon discharge. Dr. Beaudett of Portsmouth Regional Hospital reported, "I did not see any evidence of acute dangerousness to self or others, and therefore did not see any reason to involuntarily hospitalize the patient. He was permitted to be discharged at his request. There was no evidence of psychosis. He was alert, and fully oriented and his mood had been improved for several days prior to discharge." Because the hospital was unable to contact Respondent's wife at the time of his discharge, they contacted the police in the area where she resided. The police made arrangements for Respondent to be arrested by the Portsmouth Police when he was discharged. The discharge diagnosis was "major depression, recurrent, severe, possible organic effective disorder related to head injury, possible impulse control difficulty secondary to head injury,"

(17) Upon discharge from Portsmouth Regional Hospital, Respondent was arrested and incarcerated. He remained incarcerated until December, 2007. (T: 63.)

(18) On March 9, 2006, a Grand Jury of the State of Maine indicted Respondent on three counts. (ODC–7.) Count I was a Violation Of Condition

of Release, a Class C felony. Count II was a Violation Of Protection From Abuse Order, a Class D misdemeanor. Count III was Criminal Threatening, a Class D misdemeanor. On March 15, 2007, Respondent pled guilty by an Alford plea to Count I. He pled guilty to Counts II and Ill. (ODC–6.)

(19) In his criminal prosecution, Respondent did not raise as a defense his cognitive disorders or mental health condition. Respondent testified that he was intended to do so, however, due to a technical procedural mistake by his defense counsel, he was not permitted to raise the defenses. (T: 66–67.)

(20) While incarcerated, Respondent ceased taking all medications. (T: 72.) On September 9, 2006, Respondent wrote to Metropolitan Life Insurance Company regarding his disability claim. (ODC–12.) Respondent noted that his last treatment had occurred in November, 2005. Respondent wrote, "My current lack of treatment and medication with respect to my former disability are not a function of the incarceration. Rather, they reflect a change in my status I believe I am fully capable of returning to full time employment as an attorney and I intend to do so immediately upon my release. I do not any longer suffer from any medical or psychological impairment that would prevent me from returning to the successful practice of law." Respondent did not have any psychological treatment for his mental condition while incarcerated. (T: 134–135.)

(21) By Order dated June 15, 2007, the Honorable John O'Neil, a Judge of the Maine District Court, entered a Divorce Judgment granting a divorce between Respondent and his wife. (ODC–13.) In the Divorce Judgment (¶ 2.c) it is stated: "The Court specifically finds that the conduct of the Defendant (Respondent) toward Plaintiff (his spouse) and the children has been one that has a long history of violence and abusive behavior dating back to periods of time long before his accident and the use of Topomax."

(22) Respondent explained the effect of the Alford pleas to the two felony counts in the State of Maine. (T: 64.) He testified that these were termed felonies since they occurred in the context of a domestic relations case. According to Respondent, one of the felony charges is to be dismissed in December, 2008 and the other felony charge reduced to a misdemeanor presuming he has no further incidents or violations of his probation. There is no independent verification of record from the State of Maine concerning the effect of the Alford pleas.

(23) While still incarcerated, Respondent began working for a law firm as a paralegal under a work release program in the State of Maine. (T: 123.) He is employed as a paralegal. Respondent believes that his legal judgment and ability to practice law has returned. (T: 126.) He is able to read and comprehend complex legal documents, statutes and other writings. (T: 128) He has not had any psychological treatment but has been assessed by a psychologist. He is no longer receiving continuing medical or psychological care. (T: 141.) He has not stayed current with the law. (T: 129.)

(24) David A. Harris, Esq., an attorney admitted in the State of Delaware, testified on behalf of Respondent. (T: 15.) Mr. Harris had been employed

with Morris, Nichols, Arsht & Tunnell, LLP for 12 years. He testified that he and Respondent began practicing with that firm at the same time and became friends. Respondent left Morris, Nichols, Arsht & Tunnell, LLP in approximately 1999 and though Mr. Harris and Respondent remained friends, they did lose touch. Mr. Harris testified that he had reviewed the ODC Petition and that did not describe the Respondent as he knew him. He further testified that it had been eight years since he last had contact with Respondent.

(25) Respondent offered the testimony of Francis Jackson, a member of the Bar of the State of Maine. (T: 20.) Respondent is employed by Mr. Jackson as a paralegal. Mr. Jackson testified that Respondent reviews the facts of various files in his office and prepares memorandums of law. Mr. Jackson has not noted any cognitive deficiencies in Respondent's ability to perform his work nor has he noted any deficiencies in his work habits that would affect his capability nor any instances of lack of control or abusiveness. Mr. Jackson testified that he would hire Respondent as an attorney if the decision on ODC Petition is favorable to the Respondent.

(26) Respondent offered the testimony of Francis Giuliano, a member of the Bar of the State of New Jersey. (T: 86.) Mr. Giuliano testified he has known Respondent through his daughter while both were attending law school at the University of Pennsylvania, Mr, Giuliano had employed Respondent to prepare legal memorandum for him while a student and had considered offering Respondent a position with his firm. Mr. Giuliano

had an opportunity to observe the Respondent both before and after his motor vehicle accident and felt he was still able to converse and respond rationally to conversations but seemed flat emotionally.

(27) Respondent offered the testimony of Carol Tavani, M.D. (T: 146.) Dr. Tavani is a Board-certified neuropsychiatrist and is the psychiatrist who serves on behalf of the Professional Guidance Committee of the Delaware State Bar Association. Dr. Tavani testified she had reviewed numerous medical records regarding Respondent as well as papers concerning his divorce, his lawsuit against his insurance carrier and the ODC Petition. She opined that Respondent had a brain injury which compounded a concussion he suffered while in college. (T: 152–153.) This resulted in a mood disorder with depressive features and a cognitive disorder. (T: 153.) Dr. Tavani's testimony was more in the nature of Respondent's current fitness to return to the practice of law rather than an analysis of his mental condition at the time of the crimes which he committed in the State of Maine. Dr. Tavani testified that on the surface Respondent looked and acted normal, however, it is her opinion that further testing would have to occur before she would be prepared to opine that he is capable of undertaking all the responsibility of an attorney. She found that Respondent is resistant to medical treatment and appears to be in denial of the nature and extent of his injury. (T: 167–170.) As of the date of the hearing, Dr. Tavani would not recommend Respondent be permitted to practice law. (T: 169.)

## IV. STANDARD OF PROOF

Allegations of professional misconduct alleged by the Office of Disciplinary Counsel's Petition for Discipline must be proven by clear and convincing evidence. (Rule 15, Disc. Proc. Rule.) Respondent has acknowledged that he was guilty of the felony and misdemeanor charges for the crimes committed in the State of Maine and thus is in violation of Rules 3.4(a), 3.4(c), 8.4(b), 8.4(c) and 8.4(d). In addition, certified copies of a Judgment of Conviction of the crimes committed by Respondent have been made a part of the record. (ODC Exh. 3, ODC Exh. 5, and ODC Exh. 8.) Pursuant to Rule 16(b) of the Rules of Disciplinary Procedure, this is *prima facie* evidence of the commission of that crime in this disciplinary hearing. The only issue remaining for the Board's determination is the appropriate recommendation of sanctions.

## V. DISCUSSION AND ANALYSIS

### A. *Jurisdiction*

Rule 1 (a) of the Rules of Disciplinary Procedure invest the inherent power and authority in the Delaware Supreme Court to regulate the legal profession in the State of Delaware. This Rule vests in the Court the responsibility to "maintain appropriate standards of professional conduct for all lawyers subject to its jurisdiction." Accordingly, any lawyer admitted to practice in the State of Delaware is subject to the disciplinary jurisdiction of the Supreme Court, (Rule 5(a), Disc. Proc. Rules.) In an exercise of its powers, the Court has appointed the members of the Board on Professional Responsibility to conduct hearings, make factual findings and make recommendations regarding appropriate sanctions, in any, in disposition of disciplinary matters. (Rules 1 and 2, Disc. Proc. Rules.) The Court has jurisdiction over lawyers admitted in the State of Delaware even if the action which gives rise to the disciplinary proceeding did not occur while the attorney was providing legal services and the action occurred in another jurisdiction. *In the matter of David K. Brewster,* 587 A.2d 1067 (Del. 1991).

### B. Parties' Positions on Sanctions

ODC argues that Respondent's guilty pleas to the various crimes committed in the State of Maine constitute violations of the Rules of Professional Conduct as follows:

| Crimes | Rules Violated |
|---|---|
| Falsifying physical evidence | Rules 3.4(a); 8.4(b); 8.4(c); 8.4(d) |
| Terrorizing | Rule 8.4(b) |
| Assault | Rule 8.4(b) |
| Violation of condition of release | Rules 3.4(c); 8.4(b); and 8.4(d) (two counts of each) |
| Violation Of Protection From Abuse Order | Rules 3.4(c); 8.4(b); and 8.4(d) (two counts of each) |
| Criminal Threatening | Rule 8.4(b) |

ODC asserts that the felony criminal charges to which Respondent pled guilty are grounds for disbarment in the State of Delaware. It is argued that the Supreme Court has consistently imposed the sanction of disbarment for felonies. ODC further asserts the fact the felony charges may be reduced to misdemeanors or dismissed entirely upon completion of probation does not negate that Respondent engaged in felony conduct. (T–254.) In mitigation, ODC argues that Respondent has failed to prove that his brain injuries caused his criminal behavior in 2006 and thus should not be considered as a mitigating factor. (T–272.) ODC also argued that even had there been sufficient evidence to show that the Respondent suffered from a mental illness that would have contributed to the actions for which he was convicted, this is not necessarily a

mitigating factor in the imposition of sanctions.

Respondent through counsel argued that the criminal activity in which Respondent engaged occurred outside the practice of law and not at a time when he was practicing in Delaware or physically in the State. (T–275.) Respondent further argued that the crimes he committed did not involve fraud, dishonesty or moral turpitude. Though the crimes are acknowledged, Respondent argues that he has expressed remorse and suffered collateral consequences for his actions. He also asserts that in mitigation he was suffering the cumulative effects of two brain injuries and the side effects of prescription medications that contributed to his actions. Respondent suggests that the sanction recommended be six months' suspension retroactive to the Court's entry of the Interim Suspension Order on April 30, 2007.

### C. Respondent's Misconduct

ODC and Respondent have stipulated to Respondent's underlying criminal convictions and violations of the Rules of Professional Conduct heretofore set forth in this Report. Nevertheless, the Board must examine Respondent's misconduct independently in formulating its recommendation for sanctions. Respondent committed two felony criminal acts to which he pled guilty on an Alford plea. Even though he asserts in the course of the hearing that he was suffering from brain injury and cognitive disorder, Respondent admits he was aware that his actions in committing the two felonies to which he pled guilty, specifically violation of his condition of release in two separate instances, was committed knowingly and intentionally, (T–66.) Respondent also testified that he did physically assault his wife on January 4, 2006 in ·the presence of three of his minor children.

(T: 54.) He was aware that a Protection From Abuse Order had been entered against him and despite being aware of the consequences, he violated that Order. (T–61.) Further, by pleading guilty to Criminal Threatening, Respondent admitted that he knowingly engaged in such conduct against his wife, this time in the presence of two of his minor children.

In the Amended Answer, Respondent has denied the characterization in the ODC Petition concerning the assaults on his wife which occurred on January 4, 2006 and on February 28, 2006. The alleged mischaracterization on January 4, 2006 is that Respondent held a knife to his wife's throat. (Petition ¶ 5.) He does not deny the fact that he struck his wife several times in the presence of his children though he denied the description of events in the Petition. As to the February 28, 2006 incident, Respondent offered no explanation of what occurred when he went to his wife's house. However, he stated, "I knew the Order was in place. On some level, obviously, I knew that it was wrong to go to the house and I should not have done it. I didn't control the impulse to go to the house. I went anyway." (T–62.)

It is obvious to the Board Panel that the Respondent even though suffering from some level of cognitive defect, was aware and knew the consequences of his actions. He was further aware that there was an outstanding Protection From Abuse Order that prohibited him from having contact with his family as a condition of his release on bail, but he knowingly violated the Order. The PFA Order and the condition for his release on bail was violated on both January 19, 2006 and February 28, 2006.

## VI. SANCTIONS

### A. Standard for Imposing Sanctions

In determining the appropriate sanction for lawyer misconduct, the Delaware Su-

preme Court has adopted the *ABA Standards For Imposing Lawyer Sanctions. (The ABA Standards.)*

The American Bar Association has developed standards for imposing disciplinary sanctions in which a court considers the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *(ABA Standards For imposing Lawyer Sanctions,* Standard 3.0, at 25 (approved February, 1986).) *In Re Clyne,* 581 A.2d 1118, 1125 (Del.1990).

The record establishes that Respondent's conviction for the crimes identified in this report in the State of Maine constitutes clear and convincing evidence of violation of his ethical duties to the legal profession. Although his conduct may not have injured a specific client, his conduct was such that he demonstrated a knowing disregard for his ethical duty and disregard for the law which seriously undermines the legal profession and reflects adversely on all members of the legal profession and, particularly, members of the Bar of the State of Delaware. Though Respondent may have had a recognizable cognitive defect at the time, the Board finds that there was no evidence presented that specifically diagnosed the condition in January or February, 2006 when the crimes were committed and there was no evidence presented in the record which opined with a reasoned medical probability that as a result of the cognitive defect, Respondent's mental state was such that he did not commit the crime knowingly or intentionally. Thus, the Board must accept the fact that Respondent pled guilty to the crimes. On March 15, 2007, the Respondent appeared before the Honorable Ellen A. Gorman,

Superior Court Justice of the Superior Court of the State of Maine, and entered guilty pleas. Justice Gorman at the conclusion of questioning of Respondent concerning the various counts stated: "Based upon (Respondent's) answers to my questions, I am satisfied that his pleas are knowing and voluntary." (ODC Exh. 6, p. 18.)

**B. Aggravating and Mitigating Circumstances**

*ABA Standards For Imposing Lawyer Sanctions,* Standard 9.22, identifies aggravating factors to be considered in assigning a disciplinary sanction. Among the aggravating factors which are present in this instance are a pattern of misconduct, multiple offenses, and the vulnerability of the victim. In a short period of time, Respondent physically assaulted his spouse on two occasions in the presence of his minor children. In addition, he knowingly and intentionally violated Protection From Abuse Orders issued by the State of Maine on two separate occasions. Not only does this evidence a pattern of misconduct, but there were multiple offense committed to which Respondent pled guilty. Additionally, the offenses were committed against vulnerable victims. These were offenses not only against his wife but against his children. As a result of the offenses and the nature of them, Respondent is prohibited from seeing his children under any circumstance unless his wife in her sole discretion determines it would be appropriate.

The Board Panel must also consider mitigating factors in its recommendation to the Court. The mitigating factors are set forth in *ABA Standards For Imposing Lawyer Sanctions,* Standard 9.32. The factors which must be considered in this instance are absence of a prior disciplinary record, personal or emotional problems,

full and free disclosure to Disciplinary Board or cooperative attitude toward procedure, character or reputation, remorse and physical or mental disability or impairment. The Board finds that Respondent does not have a prior disciplinary record and that the Respondent has stated remorse for his actions. It is also noted that Respondent was cooperative with the Disciplinary Board in these proceedings. According to his witnesses, he was also a person of good character before his automobile accident and according to Mr. Jackson is of good character as a paralegal. The primary mitigating factors that Respondent argued were his personal or emotional problems and the mental disability or impairment. At the time of the crimes, Respondent and his wife were going through difficult times, to say the least. They were in the midst of a divorce and this escalated to the assault that occurred. However, personal or emotional problems do not permit someone to physically assault another person or to violate specific Court Orders. Respondent has also argued that his mental condition caused or contributed to the crimes. As noted, there is no evidence of record to establish a casual relationship between the two. In fact, there appears to be some incongruous facts when arguing the mental factor. For example, Respondent related that on February 3, 2006 he took an overdose of medication which rendered him comatose for two days. Then, without seeking medical treatment, he was able to drive himself to the airport in Main and fly to Wilmington, where he participated in an arbitration hearing on February 8, 2006 for his insurance claim for underinsured insurance coverage. Only after that was completed did he seek medical treatment through Dr. Weiss (Friend's Hospital). After two weeks at Friend's Hospital, he returned to the State of Maine where he again con-fronted his wife. Respondent then went to Portsmouth Regional Hospital in the State of New Hampshire upon learning that a warrant had been issued for him, thus avoiding arrest. After he was arrested and incarcerated, without any further medical treatment, the Respondent claims that he fully recovered from his cognitive disorder and is now ready to resume the practice of law. When taken in combination, these facts do not mitigate the actions of Respondent at the time he committed the various crimes. The evidence presented regarding Respondent's recovery are more in the nature of what would be expected at a reinstatement hearing rather than a hearing on sanctions.

## C. Case Law Analysis

The Board Panel's recommendation of an appropriate sanction is meant to assist the Court, but it is not determinative. *In Re Bailey,* 821 A.2d 851 (Del. 2003). The Court "has wide latitude in determining the form of discipline, and the Court will review the recommended sanction to assure that it is appropriate, fair and consistent with … prior disciplinary decisions." *Id.* at 877. Thus, prudence dictates that the Board Panel carefully review prior disciplinary precedent in making its recommended sanctions to the Court.

Respondent directed the Board Panel to a digest of cases involving violations of Disciplinary Rule 8.4(b). (T–275.) However, the focus was primarily on three decisions: *In Re McBride,* 571, A.2d. 787 (Del. 1990); *In Re Melvin,* 807 A.2d 550 (Del. 2002); and *In Re Gielata,* 933 A.2d 1249 (Del.2007). Respondent argued that the *McBride* case stood for the proposition that an attorney suffering from a brain injury can be found to have presented mitigating evidence for the imposition of any sanctions. Mr. McBride was found to

be suffering from a brain tumor which the medical evidence in that case revealed had caused him to neglect his clients and procrastinate in his legal work. In light of that finding, the disciplinary action was terminated due to the extraordinary circumstances of Mr. McBride's situation. That situation is distinguishable from the current case by the fact that Respondent has admitted that he knowingly and intentionally engaged in conduct in violation of the Rules of Professional Conduct.

The Respondent to the *Gielata* case for the proposition that the crime which Mr. Gielata pled guilty to was one involving fraud and dishonesty. However, Mr. Gielata's crime was not a felony and it was a single crime and not multiple crimes as is the case now before the Board panel. In *Gielata,* the Supreme Court imposed a public reprimand upon Mr. Gielata for his violation of the Rules of Professional Conduct, and no medical records of his condition at the time of the alleged violation were part of the record.

Respondent also directed the Board Panel to the *Melvin* decision. Mr. Melvin was indicted on a felony count of Tampering with Physical Evidence and two misdemeanors of Criminal Contempt of a Protection From Abuse Order and Hindering Prosecution. *In Re Melvin,* at 552. Based on a plea agreement, the State of Delaware dismissed the felony count and Mr. Melvin pled guilty to the misdemeanors. The Board Panel recommended a one year suspension. The Supreme Court determined that the appropriate suspension was 18 months. Unlike the case now pending, *Melvin* involved a guilty plea on two misdemeanors. The Respondent in this case has pled guilty to two felonies and six misdemeanors.

ODC argues that the Delaware Supreme Court has consistently imposed the sanc-

tion of disbarment on attorneys who have been convicted or pled guilty to felonies. For that proposition, ODC directed the Board Panel to *ABA Standard For Imposing Lawyer Sanctions* 5.1 and 7.1. (T–259–260.) Specific reference was then made to decisions of the Supreme Court where felony convictions or pleas have resulted in disbarment. The cases cited are *In Re Fink,* 825 A.2d 238 (Del.2003). *In Re Clyne,* 581 A.2d 1118 (Del.1990), *In Re Dorsey,* 683 A.2d 1046 (Del.1996), *In Re Funk,* 742 A.2d 851 (Del.1999), and *In Re Freebery,* 947 A.2d 1121 (Del. No. 113, 2008). In each of these cases, the lawyer was guilty of committing a felony and in each case the Supreme Court imposed disbarment as the appropriate sanction.

The Board Panel has considered the facts presented by ODC and Respondent and the Delaware authority relied upon by both parties and their respective arguments on the sanctions to be imposed. The Board Panel is not persuaded that a six-month suspension retroactive to April 30, 2007 is an appropriate sanction for the conduct exhibited by Respondent. Respondent pled guilty to two felony counts. Though both pleas were Alford pleas, it has been recognized that such a plea is for all intents and purposes the same as a guilty plea in any other fashion. *See State v. Connor,* 2005 WL 147931 at fns. 15, 16 and 17 (Del.Super.).

## VII. BOARD'S RECOMMENDED DISCIPLINE

In view of Respondent's felony and misdemeanor convictions in the State of Maine and his resulting violations of Rules 3.4(a), 3.4(c), 8.4(b), 8.4(c) and 8.4(d), the Board Panel recommends the sanction of permanent disbarment be imposed. In light of Delaware precedent on felony criminal conduct by Delaware lawyers, the Board Panel finds that neither aggrava-

ting nor mitigating factors weigh in this sanction analysis. The Board Panel acknowledges that Respondent has presented numerous mitigating factors which under different circumstances may have had a bearing on the recommended sanctions; however, the consistent imposition of the sanction of disbarment by the Delaware Supreme Court when a lawyer has committed a felony, compels the Board Panel to set aside the mitigating factors and to follow precedence. In making this recommendation, the Board Panel's focus is upon Respondent's numerous violations of the Delaware Lawyers Rules of Professional Conduct, the nature and number of the crimes committed and how the crimes and violations of the Rules adversely reflect on Respondent's fitness as a Delaware lawyer, and his adverse reflection on the legal profession in Delaware.

For the foregoing reasons, the Board Panel recommends in this case that the sanction of permanent disbarment be imposed.

/s/ David N. Rutt DAVID N. RUTT, ESQUIRE Board Chairman

/s/ Yvonne Anders Gordon YVONNE ANDERS GORDON, Ed.D. Board Member

/s/ Mark L. Reardon MARK L. REARDON, ESQUIRE Board Member

Dated: December 22, 2008

BOARD ON PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF THE STATE OF DELAWARE

BOARD CASE NO. 44, 2008

IN THE MATTER OF A MEMBER OF THE BAR OF THE SUPREME COURT OF DELAWARE:

BRADLEY J. ENNA, RESPONDENT

CERTIFICATE OF SERVICE

I, DAVID N. RUTT, ESQ., hereby certify a copy of the Report of the Board on Professional Responsibility with regard to the above captioned matter was sent via E-mail, this 29th day of December, 2008, to the following:

Charles Slanina, Esq. Finger & Slanina, LLC 724 Yorklyn Road Stone Mill, Suite 210 Hockessin, DE 19707 cslanina@delawgroup.com

Patricia Bartley Schwartz, Esq. Office of Disciplinary Counsel 820 North French Street Wilmington, DE 19801 patricia.schwartz@state.de.us

Stephen D. Taylor, Esq. Supreme Court of Delaware P.O. Box 1997 Wilmington, DE 19899–1997 Steve.Taylor@state.de.us

Karen L. Valihura, Esq. One Rodney Square P.O. Box 636 Wilmington, DE 19899–0636 Kvalihur@skadden.com

/s/ David N. Rutt
David N. Rutt, Esq.
Board Chairman
Board on Professional Responsibility